MOUNT PROSPECT STATE BANK, Plaintiff-Appellee and Cross-Appellant, *v.* FORESTRY RECYCLING SAWMILL *et al.*, Defendants.—(ERWIN B. NEIMAN *et al.*, Defendants-Appellants and Cross-Appellees.)

First District (4th Division)    No. 79-1875

Opinion filed October 30, 1980.—Rehearing denied March 12, 1981.

Erwin B. Neiman, of Azulay & Azulay, of Chicago, for appellants.

Harry D. Lavery and George A. Zelcs, both of Berger, Newmank & Fenchel, of Chicago, for appellee.

Mr. PRESIDING JUSTICE LINN delivered the opinion of the court:

Defendants, Erwin B. Neiman, Roland F. Thomas, Martin S. Abrams, Rosecrain Collins, and Harold Laker, bring this appeal from an order entered in the circuit court of Cook County granting plaintiff's motion for summary judgment. We reverse this order and remand for further proceedings.

Plaintiff, Mount Prospect State Bank (Bank), cross-appeals from an order which declared judgments by confession entered against the above defendants to be void. We affirm this order.

The record discloses that in December 1974 a limited partnership known as Forestry Recycling Sawmill (Sawmill) was in the process of being formed. At this time, negotiations were underway between Harvey Goldstein, one of the two general partners of Sawmill, and Bank to obtain a loan from Bank so that Sawmill could begin operations.

In late December 1974, Bank loaned Sawmill $343,740. In return Bank received a promissory note from Sawmill promising to repay the loan in monthly installments over a period of five years. Bank also received personal guarantees from Sawmill, Goldstein, and the other general partner securing repayment of the full amount of the loan. In addition, Bank received personal guarantees from several but allegedly not all of the limited partners. The five appellants are limited partners in Sawmill from whom Bank received personal guarantees. Each appellant signed a separate guaranty agreement, but all of the agreements contained the same terms except for the maximum amount of liability of each guarantor. Under the terms of these agreements, the appellants promised, jointly and severally, to pay the full amount outstanding on any loans made by Bank to Sawmill if Sawmill defaulted in its payments on those loans. However, the maximum liability of the appellants was limited to the following amounts:

| Limited Partner | Maximum Liability |
| --- | --- |
| Neiman | $19,000 |
| Thomas | 38,000 |
| Abrams | 76,000 |
| Collins | 38,000 |
| Laker | 19,000 |

All of the guaranty agreements allowed for confession of judgment if Bank had to bring an action to recover any amounts due on outstanding loans.

Following the initial loan, Bank made another loan to Sawmill in the amount of $11,500 on June 30, 1975. In September 1975, Sawmill defaulted on its payments on both loans. On November 25, 1975, Bank brought an action against Sawmill, Goldstein, and all of the limited partners who had signed and delivered personal guarantees. By this action Bank sought to recover the full balance due on the outstanding loans. The total amount sought was $269,003. On that date, Bank also obtained judgments by confession against all of the named defendants for the maximum amount allowed by their individual guaranty agreements.

On November 25, 1975, summons to confirm the judgments by confession was issued against all the defendants but none of the appellants was served until after December 1, 1975. However, on December 1, Goldstein, an attorney, filed an answer and a counterclaim to the complaint. These documents were filed on behalf of Sawmill and Goldstein, "individually and as fiduciary for all the partners." It is unclear from the record if this meant that Goldstein was representing the limited partners and filing an answer and counterclaim on their behalf.

The answer admitted the making of the loans but denied that Sawmill had defaulted. The answer also alleged that the judgments by confession were improperly entered. The counterclaim asserted that Sawmill could not pay the loans because Bank and several other individuals had conspired to prevent Sawmill from beginning its operations. The counterclaim sought damages for this alleged conspiracy to interfere with Sawmill's business.

Thereafter, negotiations began between Goldstein and Bank to settle the suit. Also, several other creditors of Sawmill became parties to these negotiations as a result of Sawmill's initiating bankruptcy proceedings in Federal court. Because of these negotiations, Bank delayed the confirmation and enforcement of the judgments entered by confession.

On December 30, 1977, a settlement agreement was entered into. The parties to this agreement were Sawmill, Goldstein, Bank, and some of Sawmill's other creditors. None of the appellants was a party to this agreement. Under the terms of this agreement, Sawmill agreed to pay Bank $303,847 with monthly installments to begin August 1, 1978. Sawmill also agreed to become fully operational by April 1, 1978. In addition, Sawmill and Goldstein agreed to allow their counterclaim to be dismissed with prejudice.

In return, Bank agreed not to oppose several claims filed by other creditors in the bankruptcy court. Bank also agreed to forego confirming

or enforcing the judgments by confession as long as Sawmill carried out the terms of the agreement.

This agreement was filed in the bankruptcy court where it was accepted by that court. As a result, on February 1, 1978, an agreed order was entered in the circuit court dismissing the counterclaim with prejudice.

Subsequently, Sawmill failed to carry out the December 1977 agreement. On December 4, 1978, Bank filed its motion to confirm the judgments by confession. Thereafter, further negotiations took place between Bank and Sawmill (apparently through Goldstein) to settle the dispute. As a result of these negotiations, Bank agreed to defer monthly payments on the December 1977 agreement until April 11, 1979. In return, Bank received the immediate payment of $25,000 as partial payment in compliance with the December 1977 agreement. Two of the appellants, Collins and Thomas, each contributed $5,000 towards the $25,000 paid to Bank.

On January 10, 1979, Bank sent a letter confirming the above agreement to all of the defendants including appellants. In this letter Bank also informed appellants that the motion to confirm judgments by confession was continued by agreed order until April 11, 1979.

Once again Sawmill defaulted. On May 31, 1979, apparently without notice to the appellants, Bank obtained an order confirming the judgments by confession. On June 22, 1979, Goldstein, on behalf of himself and the appellants and other limited partners, filed a petition to vacate the confirmation of judgments. It appears this was the first time Goldstein filed any kind of affirmative action specifically on behalf of the appellants. This petition was stricken because it was unverified, and Goldstein and the limited partners were given until July 18, 1979, to file a verified petition. Also, in this order striking the petition, Goldstein was directed to notify the appellants of what had occurred.

Goldstein did as ordered, and subsequently each of the appellants retained his own attorney. On July 18, 1979, appellants each filed a motion to vacate the judgments by confession. The appellants alleged the judgments were void for two reasons. First, they alleged that the exact amount of indebtedness could not be determined from the face of the guaranty agreements, a fact which rendered any confessed judgment based on the guarantees void. Second, they alleged that the guarantees were incomplete and unenforceable agreements because they were subject to a condition precedent, namely, that all the limited partners would sign and deliver personal guarantees to Bank. They contended that this condition had not been met because some of the limited partners had not executed guarantees. They concluded that since the guarantees were unenforceable

documents, any judgments by confession entered on those guarantees were void.

Each of the appellants attached to his motion an affidavit with exhibits in support of this second allegation—that a condition precedent to the effectiveness of the guarantees had not occurred. (It is evident that no affidavit was necessary to support the first allegation because it was purely a legal argument based on the language of the guaranty agreements which were already in the record.) In these affidavits, the appellants, with some discrepancies among them, alleged the following facts. Appellants alleged that they were asked by Goldstein, in early December 1974, to become investors in Sawmill. As part of the inducement to become limited partners and guarantors of the loan to be made by Bank, they were told by Goldstein that there would be 25 limited partnership units to be purchased by 19 limited partners, each of whom would become co-guarantors on the loan. Goldstein showed them a list of the 19 limited partners, which list indicated the amounts to be invested by each limited partner.

Goldstein also showed them a letter he had sent to Bank on December 4, 1974. Attached to that letter had been the list naming the 19 limited partners. In that letter, Goldstein represented to Bank that the list named the persons who would subscribe to the 25 limited partnership units. The letter also indicated that Bank would receive guarantees for the loan from the limited partners.

Appellants further alleged that as additional inducement to become limited partners and guarantors of the loan, Goldstein told them that Bank required guarantees from all of the limited partners, and he showed them a letter that Bank had delivered to him on December 19, 1974. With this letter were copies of all the documents needed to open the loan. The letter said that these copies were being given to Goldstein for his final approval. If he agreed to the language of the documents, Goldstein was to inform Bank of this and Bank would send him the originals to be signed. At the end of this letter was the following sentence, "Please do not forget that in addition to all of the documentation submitted to you herewith, you will also have to furnish to us signed Guarantees from each of the limited partners * * *."

Appellants alleged that as a result of all of the above inducements, on December 20, 1974, they became limited partners of Sawmill and signed their separate personal guarantees which they authorized Goldstein to deliver to Bank.

Appellants went on to allege that shortly before July 18, 1979, when they filed their motions to vacate the judgments by confession, they discovered that the following events had occurred in late December 1974.

Goldstein had failed to convince seven, eight, or nine (the number varies with each affidavit) of the 19 persons named on the list shown to appellants to become limited partners and to provide personal guarantees. Thereafter, Goldstein, with approval of Bank, convinced two other persons to become limited partners, one of whom was a neighbor of one of Bank's officers and had been suggested to Goldstein by that officer. Also, Goldstein himself decided to purchase some of the limited partnership units and become a limited partner as well as a general partner. Personal guarantees were never received by Bank from any of these additional persons, but Bank, nevertheless, paid out the initial loan to Sawmill.

Bank's sworn response to appellants' motions set forth that Bank did not know what Goldstein had said or shown to appellants as inducement to enter into the guarantees. Bank alleged that it never required all the 19 persons named on the list to become limited partners or co-guarantors of the loan. Bank asserted it had expected all persons who in fact became limited partners to become co-guarantors but had never represented to anyone that this was a condition to the making of the loan.

As to the letter given by Bank to Goldstein, Bank contended that it was merely a customary letter for transmitting documents and the crucial sentence requiring guarantees from each of the limited partners did not mean that Bank expected a guarantee from each of the 19 persons named on the list but only meant that those who actually became limited partners were expected to provide guarantees. Bank admitted that it did not receive personal guarantees from the two persons who were allegedly added as limited partners by Goldstein, nor did it receive a personal guarantee from Goldstein as a limited partner, but stated that it did not know whether they were limited partners.

At about the time it filed its response to appellants' motions to vacate the judgments, Bank also filed a motion for summary judgment supported by affidavit. The motion sought judgment against each of the appellants for the maximum amount of their guarantees less any payments that had been made on the loans. Summary judgment was sought in the event that the court vacated the judgments by confession.

In August 1979, hearings were held to consider the motions of all the parties. At these hearings, the affidavit of Goldstein was submitted on behalf of appellants. Apparently, prior to the hearings, this affidavit had been filed with the court but had not been served upon Bank.

In his affidavit, Goldstein alleged that the two additional limited partners he had added in late December 1974 had in fact become limited partners but had never submitted guarantees to Bank. Goldstein also alleged that in late December 1974 Bank told him that it would not accept Goldstein as a limited partner. At the last moment, Goldstein convinced one of his clients to become a limited partner in his place and this person

had provided a personal guarantee. Goldstein, in his affidavit, also alleged that Bank had represented to him that it would not open the loan until all of the 25 limited partnership units were purchased and the purchasers had each provided personal guarantees. However, Bank opened the loan without receiving guarantees from all of the limited partners.

At the hearings, the trial court first heard arguments on appellants' motions to vacate the judgments. The court granted those motions and declared the judgments void because the exact amount of indebtedness could not be determined from the face of the guaranty agreements.

The court next heard arguments on Bank's motion for summary judgment. Bank first alleged that it should be granted summary judgment because appellants had offered no counteraffidavits to Bank's affidavit supporting the allegations in its motion. Appellants all asserted that their affidavits in support of their motions to vacate the judgments and Goldstein's affidavit should be considered for purposes of Bank's motion for summary judgment. The trial court took these affidavits into consideration and then granted Bank's motion for summary judgment. This appeal followed.

OPINION

I

We consider first the cross-appeal brought by Bank. Bank alleges two reasons for upholding the judgments by confession. First, Bank argues that the judgments were not void, contending the exact amount of indebtedness can be determined from the face of the guaranty agreements. Second, Bank argues that appellants have either ratified the judgments or should be estopped from challenging the validity of the judgments because of the appellants' conduct during the four years the case was pending in the trial court.

As to the first argument, the law concerning the power to confess judgment is well established. The power to confess a judgment must be clearly given and strictly pursued, and a departure from the authority conferred will render the judgment by confession void. Also, the extent of liability must be ascertainable from the face of the instrument in which the power to confess a judgment is granted, and if the extent of liability can be established only by evidence *de hors* the instrument granting the power, the power to confess judgment is invalid and any judgment entered by confession is void. *Grundy County National Bank v. Westfall* (1971), 49 Ill. 2d 498, 275 N.E.2d 374; *State National Bank v. Epsteen* (1978), 59 Ill. App. 3d 233, 376 N.E.2d 40.

■■ We believe, in the present case, that the judgments by confession were void because the extent of liability could not be established without evidence *de hors* the guaranty agreements that granted the power to

confess judgments. All of the guaranty agreements state the maximum liability of each appellant. However, none of the instruments indicates the amount of the loan that was guaranteed. In fact, the instruments state that each guarantor could be liable for the full amount of any and all loans made by Bank to Sawmill up to the guarantor's maximum liability. Thus, it is evident from the instruments that an initial loan could be completely paid off, other loans made, and the guarantors would still be liable for any amounts left unpaid on those other loans.[1] Merely because the instruments state the maximum liability of each guarantor does not render the power to confess judgment valid, since at any given time the extent of liability could only be shown by evidence independent from the face of the instruments. See *Grundy County National Bank v. Westfall* (1971), 49 Ill. 2d 498, 275 N.E.2d 374; *State National Bank v. Epsteen* (1978), 59 Ill. App. 3d 233, 376 N.E.2d 40.

■■ Accordingly, we necessarily hold that the power to confess judgment in this case was invalid and the judgments entered by confession were void.

In its second argument, Bank contends that appellants have either ratified the judgments or should be estopped from attacking the validity of the judgments because of their conduct while the case was pending. Among the instances of conduct alleged as a basis for this contention are the following.

Appellants did not assert the judgments were void or assert any defense to the guaranty agreements until four years after the judgments were entered. During this time, appellants allowed Bank to enter into the December 1977 settlement agreement with Sawmill and Goldstein, and although appellants do not appear to have been parties to this agreement, they received and accepted a benefit from it because Bank delayed its confirmation of the judgments because of the settlement. In late 1978, after Sawmill failed to carry out the December 1977 agreement, appellants received the additional benefit of a further delay of the confirmations of the judgments by allowing Bank and Sawmill to renegotiate the December 1977 agreement, which renegotiation delayed the enforcement of that agreement for several more months. Also, two of the appellants, Thomas and Collins, each paid Bank $5,000 to assure the delay of the enforcement of the December 1977 agreement and to assure the delay of Bank's having the judgments confirmed.

Bank contends that all of the above conduct, taken together, shows that appellants either ratified the judgments or should be estopped from denying the judgments' validity.

■■ A void judgment may be attacked at any time regardless of the

---

[1] In the present case, Bank in fact made at least one additional loan to Sawmill after the initial loan and sought recovery from the guarantors for the defaulted amount of both loans.

number of years that have passed since the entry of that judgment. (*In re Application of Dickey* (1978), 72 Ill. 2d 317, 381 N.E.2d 260.) Thus, it is irrelevant that appellants failed to attack the judgments for four years. Also, a void judgment is just that—void. We can find no legal authority, and Bank has cited none, which says that a void judgment can become a valid judgment because of a person's conduct subsequent to the entry of that judgment. A party's acts, following the entry of a void judgment, molded into a legal theory, cannot resurrect the dead. Consequently, we necessarily hold that Bank's contentions are without merit, and we affirm the order of the trial court declaring the judgments by confession to be void.

## II

We next consider whether the entry of summary judgment in favor of Bank was improper in this case. Summary judgment shall be rendered only if the pleadings, depositions, admissions, and affidavits on file show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1979, ch. 110, par. 57; *Hedrick v. Goodwin Brothers, Inc.* (1975), 26 Ill. App. 3d 327, 325 N.E.2d 73.) To determine whether a genuine issue of material fact exists, a court must consider the evidence presented in a light most favorable to the nonmoving party and accept as true all reasonable inferences favoring that party. (See *Joiner v. Benton Community Bank* (1979), 76 Ill. App. 3d 871, 395 N.E.2d 691; *Littrell v. Coats Co.* (1978), 62 Ill. App. 3d 516, 379 N.E.2d 293.) Keeping these rules in mind, we first examine the controlling law of guaranty applicable to this case.

A contract of guaranty may be conditional on others becoming co-guarantors and the contract is unenforceable if this condition is not met. (*State Bank v. Cirivello* (1978), 74 Ill. 2d 426, 386 N.E.2d 43; *Belleville Savings Bank v. Bornman* (1888), 124 Ill. 200, 16 N.E. 210.) Also, the parol evidence rule does not bar the use of extrinsic evidence to establish that this condition existed. (*State Bank v. Cirivello* (1978), 74 Ill. 2d 426, 386 N.E.2d 43.) Although this condition is usually one imposed by the guarantors, either the creditor or guarantor may premise the guaranty on this condition, and if the condition is known and agreed upon by the parties, it becomes a part of the guaranty. (*State Bank v. Cirivello* (1978), 74 Ill. 2d 426, 386 N.E.2d 43; see *United States v. Everett Monte Cristo Hotel, Inc.* (9th Cir. 1975), 524 F.2d 127.) Additionally, if a bank conditions the making of a loan on the receipt of contracts of guaranty from several persons and the bank makes known this condition to the potential guarantors, who enter into their contracts of guaranty in reasonable reliance on the bank's representation, the condition becomes a part of the contracts of guaranty even though the loan agreement and guaranty agree-

ments are different contracts and even though the guarantors fail to communicate to the bank that they agreed to the condition or insisted upon it. See *State Bank v. Cirivello* (1978), 74 Ill. 2d 426, 386 N.E.2d 43.

■■ In the present case, we believe a genuine issue of material fact exists as to whether a condition to the contracts of guaranty was that all the limited partners become co-guarantors. There is also a genuine issue of material fact as to whether this condition was met.

Viewing the evidence in a light most favorable to the appellants, we find that, in December 1974 before the appellants signed their guarantees, Goldstein told them that Bank insisted upon all of the limited partners becoming co-guarantors. Additionally, Goldstein showed them the list of 19 persons who were to be subscribers to the 25 limited partnership units and also showed them Bank's December 19, 1974, letter which said that Bank required a guarantee from each of the limited partners before it would open the loan. Goldstein also told them that Bank had the list of 19 subscribers, and it is a reasonable inference that Bank's letter of December 19, 1974, was referring to these 19 persons when it insisted upon a guarantee from "each of the limited partners." All of the above is supported by appellants' affidavits. From the above, it can be reasonably inferred that appellants entered into their contracts of guaranty with the understanding that all 19 persons on the list of subscribers would become co-guarantors.

Bank does not presently dispute that Goldstein told the appellants what he allegedly told them, nor does Bank dispute that it had the list of 19 subscribers to the limited partnership units or that it delivered the December 19, 1974, letter to Goldstein. Bank also admits that not all of those 19 persons on the list became co-guarantors. However, Bank contends it did not know what occurred between Goldstein and the appellants. Bank also contends it did not intend for the December 19 letter to be relied upon by the appellants because it was only a form letter for the transmission of documents, and Bank asserts that it never communicated with any of the appellants directly. However, we believe that direct communication of Bank's condition was unnecessary. (*Cf. State Bank v. Cirivello* (1978), 74 Ill. 2d 426, 386 N.E.2d 43, in which plaintiff bank communicated its condition to only three of 13 potential guarantors but those guarantors who had not communicated directly with the bank were allowed to assert that a condition to their guarantee was that all 13 potential guarantors should become co-guarantors.) All that was required was that Bank knew or should have known that its condition would be communicated to the appellants and relied upon by them as an inducement to enter into their guarantees. Whether Bank knew or should have known this, where its letter was allegedly only a form letter, is a question of fact that must be determined at trial.

Bank also contends that its December 19, 1974, letter merely indicates that it required guarantees from only those who in fact became limited partners and it did not necessarily require guarantees from the 19 persons on the list of subscribers. However, as we have already said, a reasonable inference arises that Bank required those 19 persons to become co-guarantors because of Bank's having this list before it delivered the December 19, 1974, letter. Also, even if Bank's contention is true, there still exists a genuine issue of material fact as to whether Bank received guarantees from each person who became a limited partner, since it is alleged in Goldstein's affidavit that at least two limited partners did not become co-guarantors, although Bank apparently denies this to be a fact and alleges that it received guarantees from all the limited partners it knew to be limited partners.

Finally, Bank contends that there can be no genuine issues of material fact because appellants failed to file counter-affidavits to Bank's motion for summary judgment, which motion of Bank was supported by affidavit, and that the appellants' affidavits on file did not comply with Supreme Court Rule 191 (Ill. Rev. Stat. 1979, ch. 110A, par. 191) and thus should not have been considered in opposition to Bank's motion.

■■ Appellants' affidavits were filed with their motion to vacate the judgments by confession. They did not specifically file any affidavits in opposition to Bank's motion for summary judgment. They said at the hearing on the motion for summary judgment that they would stand on their affidavits filed in connection with their motions to vacate the judgments by confession to oppose Bank's motion for summary judgment. There is no reason that these affidavits, as long as they complied with Supreme Court Rule 191, could not be considered since the entire record must be viewed in determining whether to grant a motion for summary judgment. *Van Vactor v. Blue Cross Association* (1977), 50 Ill. App. 3d 709, 365 N.E.2d 638.

As to the sufficiency of the affidavits, Bank contends that they do not comply with Rule 191 because they do not specifically state that they were made on the personal knowledge of the affiants and do not specifically state that the affiants, if sworn as witnesses, could testify competently to the contents of the affidavits. (See Supreme Court Rule 191(a) (Ill. Rev. Stat. 1979, ch. 110A, par. 191(a)).) Also, Bank contends that some of the facts stated in the affidavits could not have been made on the personal knowledge of the affiants.

■■ ■ Technical deficiencies do not render affidavits improper. (*LaMonte v. City of Belleville* (1976), 41 Ill. App. 3d 697, 355 N.E.2d 70.) Substance and not form controls. If it appears that an affidavit is based on the personal knowledge of the affiant and a reasonable inference is that the affiant could competently testify to the contents of the affidavit at trial,

there is no requirement that the affiant specifically attest to these facts. (See *Mitchell v. Simms* (1979), 79 Ill. App. 3d 215, 398 N.E.2d 211; *Scheinfeld v. Muntz TV, Inc.* (1966), 67 Ill. App. 2d 8, 214 N.E.2d 506.) Though some of the facts stated in the appellants' and Goldstein's affidavits were apparently not made on personal knowledge, we have, on appeal, considered only those facts which were asserted on personal knowledge and thus we believe that those parts of the affidavits we have considered conformed to Rule 191.

Therefore, we hold that summary judgment was improper in this case because there exist genuine issues of material fact.

Accordingly, for the reasons noted, we reverse the order of summary judgment and remand for further proceedings. We affirm the order declaring the judgments by confession to be void.

Reversed in part and remanded, affirmed in part.

JIGANTI and ROMITI, JJ., concur.