FINANCIAL MANAGEMENT SERVICES, INC., Plaintiff-Appellee, v. SI-
BILSKY AND SIBILSKY, INC., *et al.*, Defendants-Appellants.

First District (4th Division) No. 83—2369

Opinion filed January 31, 1985.

Russell J. Hoover, of Chicago (Jenner & Block, of counsel), for appellants.

Roderick J. Bergin, James J. Romberg, and Matthew J. Egan, all of Chicago, for appellee.

JUSTICE ROMITI delivered the opinion of the court:

Robert Sibilsky, Diana Sibilsky, and Darlene Sibilsky (the Sibilskys), corporate officers of Sibilsky & Sibilsky, Inc. (SSI), a Michigan corporation, appeal from the judgment of the circuit court of Cook County which denied their motion to vacate a judgment by confession previously entered against each of them personally in Cook County and denied their motion to quash summonses served upon them to confirm the judgment. On appeal, the Sibilskys contend that the judgment by confession was void for lack of Illinois *in personam* jurisdiction. They raise the following questions for our review:

1. Whether they were individually insulated from suit in Illinois under the fiduciary shield doctrine.

2. Whether they lacked sufficient minimum contacts with Illinois to be subject to suit here.

3. Whether the judgment by confession was invalid on the ground that the application to confess judgment was not made in the county in which the note was executed.

4. Whether the warrant of attorney under which judgment was confessed was legally insufficient on the ground that at the time the instrument was created it failed to establish a certain and liquidated amount for which judgment could be confessed.

We affirm.

The Sibilskys attack the jurisdictional basis of a judgment by confession against each of them individually obtained by Financial Management Services, Inc. (FMSI), which is incorporated in Illinois and has an office in Rosemont. Judgment was confessed in the Cook

County Circuit Court in the amount of $94,464.34 on June 10, 1981. Summonses to confirm the judgment were served upon Diana and Robert jointly on December 13, 1982; a similar summons was served upon Darlene on December 4, 1982.

On February 14, 1983, the Sibilskys filed a special appearance in the Cook County Circuit Court, accompanied by their petition to vacate the judgment by confession and their motion to quash service of process, solely and specifically for the purpose of objecting to the court's jurisdiction over them when the judgment by confession had been entered. The petition to vacate alleged in substance that the facts did not support assertion of *in personam* jurisdiction of the Illinois circuit court because they were not citizens or residents of Illinois, owned no property in Illinois, and had transacted no business in Illinois. The affidavit of Robert Sibilsky was included in support of the motion to vacate, as were a copy of the promissory note to FMSI, its accompanying security agreement between the parties, and supporting documents.

The promissory note on which FMSI obtained judgment was dated May 8, 1980, in the amount of $136,646.77. The note itself was not signed by any of the Sibilskys, but instead was executed by David Nowell, who was general manager of FMSI at the time, as attorney-in-fact for the Sibilskys. He was granted this authority by virtue of a power of attorney form which appeared immediately below the note and stated that Nowell was given the authority "to execute [the] promissory note set forth above at any location within the State of Illinois *** in the capacit[ies] with respect to such note as [are] set forth with [the] name[s] below, and to deliver said note to Financial Management Services, Inc." The power of attorney was dated April 15, 1980. In the capacity of makers on the note, there appeared upon the power of attorney the typewritten names of "Sibilsky and Sibilsky, Inc.," "Robert Sibilsky," and "Diana Sibilsky." In the capacity of guarantors on the note, there appeared upon the power of attorney the typewritten names of "Robert Sibilsky," "Diana Sibilsky," and "Darlene Sibilsky." The Sibilskys signed the instrument on the blank spaces above their typewritten names. Thus, Robert and Diana each signed the document twice, as makers and as guarantors on the note. Darlene signed only as guarantor.

On the promissory note itself, there appeared as guarantors the names of Robert, Diana and Darlene in printed handwriting. As makers on the note, there appeared in similar fashion the names of SSI, Robert, and Diana. The note contained the following pertinent language of *cognovit*:

"The Undersigned hereby, jointly and severally, irrevocably authorize any attorney of any court of record to appear for them, or either or any of them, in such court in term time or vacation, at any time and from time to time after payment is due, whether by acceleration or otherwise, and confess a judgment without process against them, or anyone or more of them, in favor of the holder of this note for such sum as may appear to be unpaid and owing thereon together with interest, costs, and attorney's fees, and to waive and release all errors which may intervene in such proceeding and consent to immediate execution upon such judgment, hereby ratifying and confirming all that said attorney may do by virtue hereof.

WARNING—BY SIGNING THIS PAPER YOU GIVE UP YOUR RIGHT TO NOTICE AND COURT TRIAL. IF YOU DO NOT PAY ON TIME, A COURT JUDGMENT MAY BE TAKEN AGAINST YOU WITHOUT YOUR PRIOR KNOWLEDGE AND THE POWER OF A COURT CAN BE USED TO COLLECT FROM YOU AND YOUR EMPLOYER REGARDLESS OF ANY CLAIM YOU MAY HAVE AGAINST THE CREDITOR, WHETHER FOR RETURNED GOODS, FAULTY GOODS, FAILURE ON HIS PART TO COMPLY WITH THE AGREEMENT, OR ANY OTHER CAUSE."

The promissory note clearly indicated that the offices of FMSI were located at 9575 Higgins Road, Rosement.

The security agreement which accompanied the promissory note showed SSI as the debtor and Robert, Darlene, and Diana as "Individual Applicant[s] or Guarantor[s]." The document was signed by Robert as president of SSI and dated April 30, 1980. It further recited that there was an account owing from SSI to Wittock Supply Co. (Wittock) in the amount of roughly $100,000 as of April 1980 for supplies sold to SSI by Wittock, and that SSI requested, consented to and acknowledged that the debt of said account was being assigned and sold by Wittock to FMSI. The agreement indicated that the total indebtedness of SSI, including closing costs and 11% interest over the period of 36 months, was $136,646.77. Documents supporting the security agreement specified those items of property pledged as security on the note (*e.g.*, land, inventory, life insurance policy).

Robert's affidavit stated that he was married to Diana and brother-in-law to Darlene and that each of them had been a corporate officer of SSI. It further recited in substance the following pertinent information: For a number of years prior to September 1979, SSI had purchased plumbing and heating supplies from Wittock, a Michigan

wholesaler, on a 90-day credit line. At that time Wittock informed SSI that it would no longer provide such a line of credit. At some time prior to April 1980, however, Wittock informed SSI that Wittock had access to a financial source which could be used to bring its account current and that thereafter Wittock would continue to deal with SSI on a 30-day credit line. As of April 1980, none of the Sibilskys was personally obligated to Wittock in any amount.

On April 30, Wittock's credit manager, Marek, had a meeting in Marquette, Michigan, with the Sibilskys and their corporate accountant and presented to them the promissory note, security agreement, and supporting documents. The portion of the promissory note which specified the amount of the loan was not completed. The Sibilskys had had no previous communication with any representative of FMSI.

According to Robert's affidavit, before the Sibilskys agreed to execute the instruments they "advised Marek that [they] would sign the documents only in [their] capacities as officers and agents of SSI and that [they] were not agreeing to and would not agree to any personal liability for the obligation referred to in the instruments." Robert further stated that Marek "acknowledged" that by signing the documents, the Sibilskys were not obligating themselves personally for the debt. He also stated that he, Diana and Darlene signed only the power-of-attorney portion of the note in the spaces immediately above their typewritten names on the form; at some date and place unknown to the Sibilskys, the blanks in the promissory note were filled in by someone not known to them and their hand-printed names were entered on the note by a person unknown to them. Lastly, Robert claimed that none of the Sibilskys individually authorized Nowell or any other person to bind them personally on the note. The Sibilskys became aware of their individual liabilities when Wittock brought suit against them in Michigan.[1]

In opposition to the Sibilskys' motion, FMSI presented the affidavit of Marek. He contradicted the statements in Robert's affidavit to the extent that Marek claimed that the Sibilskys did not ask him any questions about the instruments after reviewing them nor before signing them. He also stated that they did not ask him any questions concerning the terms or conditions of the power-of-attorney provisions,

---

[1]The record discloses that FMSI has assigned its interest in the confessed judgment to Wittock and that Wittock has filed an action in Michigan to confirm that judgment. Because the Sibilskys have challenged confirmation in the Michigan proceeding on the grounds that the Illinois court lacked *in personam* jurisdiction over them to enter such a judgment, that cause has been continued pending final adjudication of Sibilskys' present action to vacate the judgment in Illinois.

nor did they ask why they had to sign as both makers and guarantors. Marek further stated that Nowell's name had been typed onto the power-of-attorney portion of the note before it was signed by the Sibilskys.

Based on the parties' pleadings, documents, affidavits, and written and oral argument, the trial court denied the Sibilskys' motions to vacate the judgment by confession and summonses to confirm judgment on August 29, 1983. The Sibilskys' notice of appeal was timely filed.

I

The Sibilskys first contend that Illinois lacked jurisdiction over them because they acted only in their corporate capacity when they signed the power of attorney and security agreement; consequently, under the fiduciary shield doctrine, these acts could not support the assertion of jurisdiction over them in order to obtain their personal liability for any default on the promissory note. We disagree.

■■ Under the fiduciary shield doctrine, "the conduct of a person in a representative capacity cannot be relied upon to exercise individual personal jurisdiction over that person." (*Hurletron Whittier, Inc. v. Barda* (1980), 82 Ill. App. 3d 443, 447, 402 N.E.2d 840; see also *Mergenthaler Linotype Co. v. Leonard Storch Enterprises, Inc.* (1978), 66 Ill. App. 3d 789, 797, 383 N.E.2d 1379; *State Security Insurance Co. v. Frank B. Hall & Co.* (N.D. Ill. 1981), 530 F. Supp. 94, 97.) Here, however, it is disputed between the parties whether the Sibilskys acted in only their corporate capacities when they signed the power of attorney and security agreement. Both these documents explicitly indicate that Robert, Diana and Darlene were guarantors on the note. Robert's affidavit stated that he informed Marek that he was signing in his corporate capacity only, while Marek's affidavit claimed that they asked no questions regarding the terms of the instruments. It is well established that factual conflicts appearing from "the affidavits and pleadings must be resolved in plaintiff's favor for purposes of determining whether a *prima facie* case for *in personam* jurisdiction has been established." (*Kutner v. DeMassa* (1981), 96 Ill. App. 3d 243, 247-48, 421 N.E.2d 231.) For purposes of analysis, therefore, we must assume as jurisdictional fact that the Sibilskys signed the power of attorney in their personal capacities as guarantors. As a result, they would not be protected from the assertion of Illinois jurisdiction over each of them individually by virtue of the fiduciary shield doctrine.

The Sibilskys stress on appeal that although Marek stated that he

"understood" that by signing next to the word "guarantor" the Sibilskys were "personally guaranteeing the loan,"[2] he does not deny being told by them that they were signing only as representatives nor of acknowledging to them that they were assuming no personal liability. On this basis, they seek to establish that their signature solely in their corporate capacities is an undisputed fact. We find this interpretation of the affidavits to be strained and overly technical, however, when viewed in the context of all of the factual matter presented. Regardless of whether the Sibilskys' specific remark could be characterized as a "question" or a "statement," it is nevertheless clear that their understanding of their liability when they signed the instruments is a disputed fact between the parties.

## II

 Next, the Sibilskys claim that the facts were insufficient to assert jurisdiction over them individually. We disagree.

Section 2—209 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 2—209) provides in relevant part:

"Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

(1) The transaction of any business within this State ***."

The standard set forth in this section is not identical to the minimum-contacts test of the due process clause of the fourteenth amendment. (*Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 197-98, 429 N.E.2d 847; *Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 436, 427 N.E.2d 1203.) Thus, the construction and application of the Illinois long-arm statute does not "depend entirely upon decisions determining in what circumstances due process requirements would permit long-arm jurisdiction." (*Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 436, 427 N.E.2d 1203.) Consequently, we are called upon to engage in a two-step analysis: first, we must determine whether the Illinois statute embraced FMSI's claim to confess judgment; if so, we must determine whether the assertion of jurisdiction was prohibited by due pro-

---

[2]Sibilskys rely upon this portion of the Marek affidavit in spite of the fact that the trial court struck this statement from the affidavit based upon the Sibilskys' motion to strike.

cess. (See *People v. Parsons Co.* (1984), 122 Ill. App. 3d 590, 597, 461 N.E.2d 658; *Veeninga v. Alt* (1982), 111 Ill. App. 3d 775, 777, 444 N.E.2d 780; *Vena v. Western General Agency, Inc.* (N.D. Ill. 1982), 543 F. Supp. 779, 784.) Here, the Sibilskys raise no question of whether they engaged in the "transaction of any business within this State" (Ill. Rev. Stat. 1981, ch. 110, par. 2—209(a)(1)), but instead argue only that they lacked sufficient minimum contacts with Illinois to be amenable to suit here. Nevertheless, we address both aspects of the applicable criteria.

Under section 2—209(a)(1) of the Code, even a single act of a defendant or his agent may be sufficient to find that business was transacted within this State (*People v. Parsons Co.* (1984), 122 Ill. App. 3d 590, 597, 461 N.E.2d 658), so long as it is this act which forms the basis of the plaintiff's claim. (Ill. Rev. Stat. 1981, ch. 110, par. 2—209(c); *Empress International, Ltd. v. Riverside Seafoods, Inc.* (1983), 112 Ill. App. 3d 149, 152, 445 N.E.2d 371.) The provision requires essentially that the plaintiff's claim lie "in the wake of the commercial activities by which [the] defendant [allegedly] submitted to the jurisdiction of Illinois courts." *Loggans v. Jewish Community Center* (1983), 113 Ill. App. 3d 549, 557, 447 N.E.2d 919; see also *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 198-99, 429 N.E.2d 847; *Colnar v. The Baldknobbers, Inc.* (1982), 107 Ill. App. 3d 234, 239, 437 N.E.2d 718; *Deluxe Ice Cream Co. v. R.C.H. Tool Corp.* (7th Cir. 1984), 726 F.2d 1209, 1214-16.

The record here shows that a significant portion of the parties' commercial dealings centered around acts to be performed by the Sibilskys or their agent in Illinois. First, by the express terms of the power of attorney which the Sibilskys executed, Nowell was granted the authority to sign the promissory note on their behalf in Illinois. In addition, they were obligated to make payments to FMSI in Illinois. Further, pursuant to the terms of the agreement, no contract was formed until it was accepted and signed by FMSI in Illinois, and the funds loaned to the Sibilskys were transmitted from FMSI in Illinois. In short, the parties' agreement was formed and performed in substantial part in Illinois; their meeting in Marquette, Michigan, on April 30, in comparison, was more in the nature of preliminary negotiations. Consequently, the facts establish that the Sibilskys "transacted business" within Illinois and that this transaction gave rise to FMSI's claim against them.

We also conclude that assertion of Illinois jurisdiction comported with due process. The due process clause "requires only that in order to subject a defendant to a judgment *in personam,* if he is not

present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (*International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158.) The acts of the defendant which establish such minimum contacts must evidence that "the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (*Hanson v. Denckla* (1958), 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298, 78 S. Ct. 1228, 1240.) Relevant factors to determine minimum contacts include the nature of the business transaction, the applicability of Illinois law, and the contemplation of the parties (*Coca-Cola Co. v. A. Epstein & Sons International, Inc.* (1980), 89 Ill. App. 3d 253, 258, 411 N.E.2d 917), as well as who initiated the agreement, where the contract was formed, and where it was to be performed. *Empress International, Ltd. v. Riverside Seafoods, Inc.* (1983), 112 Ill. App. 3d 149, 153-54, 445 N.E.2d 371.

■ The facts here demonstrate that the Sibilskys had sufficient minimum contacts with Illinois to render them amenable to suit here. The promissory note and security agreement both prominently indicated that Illinois law governed their terms and enforcement. The security agreement further recited that the instruments would not form a binding contract until signed and accepted by FMSI in Illinois. Robert's affidavit also established that the agreement was necessary for the continued business vitality of SSI.[3] Thus, the Sibilskys relied upon and invoked the benefits and protections of Illinois law in order to achieve the financial stability of their corporate enterprise.

### III

■ The Sibilskys further argue that the judgment by confession was invalid because the application to confess judgment was not made in compliance with section 2—1301 of the Code of Civil Procedure. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1301.) We disagree.

Section 2—1301 provides in pertinent part that the "application to confess judgment shall be made in the county in which the note or obligation was executed ***. A judgment entered by any court in any [other] county *** has no force or validity ***." (Ill. Rev. Stat. 1981,

---

[3]In the proceedings before the Michigan court, a transcript of which is part of our appellate record in this cause, Robert further testified that SSI had unsuccessfully attempted to obtain funds from lending institutions in Michigan in its attempts to bring current its account with its plumbing supplier, Wittock.

ch. 110, par. 2—1301(c).) Where the documents contain no language to the contrary, a promissory note is deemed executed when it is signed by the payee and delivered to the payor. (*Investors Commercial Corp. v. Metcalf* (1957), 13 Ill. App. 2d 99, 104-05, 140 N.E.2d 924.) Where the instruments state that no agreement is formed until the note and its accompanying documents are accepted and signed by the payor, however, no contract is formed and thus no note executed until this is accomplished. (*Nationwide Commercial Co. v. Knox* (1973), 10 Ill. App. 3d 13, 15, 293 N.E.2d 638.) In this latter instance, the proper place for confession of judgment upon the note is the court of jurisdiction where the note was accepted and its accompanying instruments signed by the payor. *Nationwide Commercial Co. v. Knox* (1973), 10 Ill. App. 3d 13, 293 N.E.2d 638.

The facts here disclose that Cook County Circuit Court was the proper forum for confession of judgment against the Sibilskys. The note was executed here, since by its express terms it became binding only upon acceptance by FMSI and upon its acceptance and signature of the security agreement. The trial court properly entered the confessed judgment against the Sibilskys.

IV

▊ Lastly, the Sibilskys contend that the warrant of attorney under which judgment was confessed was legally insufficient because at the time they signed the instrument it failed to establish a certain and liquidated amount for which judgment could be confessed. We do not agree.

A warrant of attorney in a promissory note "is to be strictly construed against the party for whose benefit the instrument was executed." (*Ninow v. Loughnane* (1981), 103 Ill. App. 3d 833, 840, 431 N.E.2d 1267.) The extent of liability undertaken must be ascertainable from the face of the instrument in which the warrant is granted or in its accompanying documents which also formed the basis of the parties' agreement. (*Ninow v. Loughnane* (1981), 103 Ill. App. 3d 833, 839-40, 431 N.E.2d 1267; *Mount Prospect State Bank v. Forestry Recycling Sawmill* (1980), 93 Ill. App. 3d 448, 455-56, 417 N.E.2d 621; *State National Bank v. Epsteen* (1978), 59 Ill. App. 3d 233, 234-36, 376 N.E.2d 40.) Where the extent of liability can be established only on the basis of evidence *dehors* the note and its accompanying instruments, however, the power to confess judgment is invalid and any judgment entered pursuant thereto is void. *Grundy County National Bank v. Westfall* (1971), 49 Ill. 2d 498, 501-02, 275 N.E.2d 374; *State National Bank v. Epsteen* (1978), 59 Ill. App. 3d 233, 376 N.E.2d 40;

836

*Ninow v. Loughnane* (1981), 103 Ill. App. 3d 833, 431 N.E.2d 1267; *Mount Prospect State Bank v. Forestry Recycling Sawmill* (1980), 93 Ill. App. 3d 448, 417 N.E.2d 621.

The promissory note in the instant case did not show a specific dollar amount when the Sibilskys signed the power of attorney and security agreement. Nevertheless, the security agreement had been fully completed, indicating the amount of principal and interest, the interest percentage, the time period in which repayment was required, and the total amount of indebtedness. The extent of the Sibilskys' liability was consequently ascertainable by them from the face of the security agreement when they signed the power of attorney and was specifically incorporated by reference therein. The power of attorney and the judgment entered thereon were therefore valid.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

JIGANTI, P.J., and LINN, J., concur.