BOATMEN'S BANK OF CAPE GIRARDEAU, Plaintiff-Appellant, v. STANLEY N. ADAMS, JR., Defendant-Appellee.—BOATMEN'S BANK OF CAPE GIRARDEAU, Plaintiff, v. STANLEY N. ADAMS, JR., Defendant and Third–Party Plaintiff-Appellant (Sieben, Inc., d/b/a Plaza Motor Company, *et al.*, Third–Party Defendants-Appellees).

Fourth District   Nos. 4—89—0009, 4—89—0036 cons.

Opinion filed November 30, 1989.

Jeffry P. Hine, of Oliver, Oliver, Waltz & Cook, P.C., of Cape Girardeau, MIssouri, for appellant Boatmen's Bank of Cape Girardeau and appellee Roger D. Davault.

Alex M. Kanter, of Herzog, Ahlquist, Kanter & Hoffert, of St. Louis, MIssouri, for appellee Sieben, Inc.

James M. Drake, of Holley, Keith & Huntley, of Springfield, for Stanley N. Adams, Jr.

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff, a Missouri bank, filed a replevin action in Sangamon County to recover a car to which it has title and a perfected security interest. Plaintiff loaned money to Roger Davault (Davault) to purchase the car. Six months later he returned the car to the dealer (Sieben, Inc., d/b/a Plaza Motors) for repair and resale. Michael Sheahan (Sheahan), a salesman for Plaza Motors, purchased the car. The check he gave Davault, payable to plaintiff and Davault, was not honored. In the interim, Sheahan sold the car to Springfield, Illinois, resident John Taylor (Taylor), who then sold it to defendant Stanley Adams (Adams). Title to the car remained with the bank. Adams filed a third-party complaint against Sieben, Inc., and Davault. The circuit court dismissed the third-party defendants and denied plaintiff's replevin complaint. Plaintiff appealed the denial of its replevin complaint (appeal No. 4—89—0009), and Adams appealed the dismissal of the third-party complaint (appeal No. 4—89—0036). The cases were consolidated on appeal, and both are presented here. We reverse the decision of the circuit court denying plaintiff's replevin complaint and affirm the decision dismissing the third-party complaint.

Plaintiff is a Missouri banking corporation with its principal place of business in Cape Girardeau, Missouri. Plaintiff loaned $29,711.22 to Davault to purchase a 1981 Porsche automobile. Davault, a resident of Bollinger County, Missouri, signed an installment note and security agreement. He purchased the car on January 12, 1985, from Plaza Motor Company in Creve Coeur, Missouri. Plaintiff acquired a first lien on the car as collateral for the loan, pursuant to the security agreement executed by Davault. Plaintiff perfected its lien by sending the title application and various other documents to the Missouri Department of Revenue, the State agency responsible for licensing and lien perfection. The Department of Revenue issued a certificate of title in Roger D. Davault's name with plaintiff as lienholder.

In September 1985, Davault took the car to Plaza Motors for repair and resale. Sheahan, a resident of St. Louis County, Missouri, stated Davault inquired about trading the car to Plaza Motors for another car. Sheahan could not locate the car Davault wanted, and Plaza Motors was not interested in purchasing the Porsche. Sheahan offered to arrange a sale of the car to Taylor. Sheahan claims he told Davault the sale would be through him and not through Plaza Motors. Davault

consented, and Sheahan wrote a personal check for $22,000 payable to Davault and plaintiff. He advised Davault not to cash the check until he (Sheahan) received money from Taylor. Davault offered the title to Sheahan, who refused to accept it. Davault denied, in his deposition, ever having title to the car.

Davault took the check from Sheahan to plaintiff to pay his loan. Plaintiff sent the check, drawn on First Missouri Bank, to that bank for collection. Plaintiff attached the car's title to the check and signed the release section on the certificate of title.

First Missouri Bank refused to pay the check because Sheahan's account contained insufficient funds. First Missouri Bank returned the check and title to plaintiff. Plaintiff never received $22,000 from Sheahan, and Davault defaulted on the loan. Although given opportunities to cure the default, Davault never did so, and plaintiff accelerated the loan. The amount due is now $13,147.54.

Sheahan contacted Taylor, a resident of Springfield, Illinois, and offered to sell him the car. Taylor testified Sheahan told him he was purchasing the car from an individual in Missouri. Sheahan claims he specifically told Taylor he was acting in his individual capacity in buying and selling the Porsche and not as an agent of Plaza Motors. Taylor paid Sheahan $23,000 for the car. Sheahan delivered the car to him in Springfield and Taylor drove it for approximately one week. On cross-examination, Taylor admitted the car had Missouri license plates when delivered to him. He also admitted he knew at the time that obtaining title to a car is essential to ownership, and he never received title. He claimed he and Sheahan were waiting on the title to "catch up" to the car. While cleaning the car, he found documents in the glove compartment bearing Davault's name, but assumed Davault was a previous owner. He never had any contact with plaintiff or Davault.

One week after receiving the car, Taylor sold it to defendant, a resident of Springfield, Illinois, for $23,000. Defendant purchased the car with the Missouri license plates on it and never received title from Taylor. Taylor testified he told defendant he (Taylor) did not have title to the car at the time of the sale, and defendant corroborated Taylor's testimony. Defendant testified Taylor showed him the papers bearing Davault's name found in the car's glove compartment. Defendant is now in possession of the car and maintains insurance on it. The car still has Missouri license plates, never transferred to defendant's name.

In an affidavit dated August 11, 1987, almost one year before the above deposition testimony was taken, defendant stated he believed

the car was being sold by Plaza Motors. He believed Sheahan acted as an agent of Plaza Motors in selling the car and that Plaza Motors had given him authority to sell it.

Plaintiff filed a replevin action against defendant on August 4, 1986, in Sangamon County circuit court. Plaintiff sought possession of the car or its value, $26,000, damages of $1,500, and costs of the lawsuit. On May 1, 1987, defendant moved to dismiss plaintiff's complaint and filed a third-party complaint against Sieben, Inc., d/b/a Plaza Motors, and Davault. Defendant sought relief in the event he was held liable to plaintiff. Defendant sought $23,000, the value of the car, damages of $5,000 and costs of the lawsuit from Sieben, Inc., and from Roger Davault. Davault entered a special appearance on June 11, 1987, and moved to dismiss the third-party complaint for lack of jurisdiction and to quash service of process under the entry of special appearance. Sieben, Inc., entered a special appearance on July 6, 1987, challenging the court's jurisdiction.

The third-party defendants were dismissed on August 27, 1987. The court denied defendant's motion to dismiss plaintiff's complaint. On June 7, 1988, plaintiff moved to amend its complaint by interlineation, claiming damages of $10,000.

The circuit court conducted a hearing on the matter on July 1, 1988. After another hearing on September 15, the court ordered a docket entry denying plaintiff's complaint for replevin on the ground plaintiff failed to establish a *prima facie* case. Plaintiff moved for modification of the judgment or for a new trial but the court denied the motion. Plaintiff appeals.

We consider first the issues raised in the replevin action, appeal No. 4—89—0009. Initially, we must decide whether Illinois or Missouri law applies.

■■ ■ Missouri and Illinois have adopted the Restatement (Second) of Conflict of Laws (1969) (Restatement). (*Kennedy v. Dixon* (Mo. 1969), 439 S.W.2d 173; *Ingersoll v. Klein* (1970), 46 Ill. 2d 42, 262 N.E.2d 593.) The Restatement, section 6, directs the forum State to apply its laws to resolve choice of law issues. The applicable Illinois statute in this case is section 9—103(2) of the Uniform Commercial Code (Ill. Rev. Stat. 1987, ch. 26, par. 9—103(2)), which reads in pertinent part:

"(a) This subsection applies to goods covered by a certificate of title issued under a statute of this State or of another jurisdiction under the law of which indication of a security interest on the certificate is required as a condition of perfection.

(b) Except as otherwise provided in this subsection, perfec-

tion and the effect of perfection or non-perfection of the security interest are governed by the law (including the conflict of laws rules) of the jurisdiction issuing the certificate until 4 months after the goods are removed from that jurisdiction and thereafter until the goods are registered in another jurisdiction, but in any event not beyond surrender of the certificate. After the expiration of that period, the goods are not covered by the certificate of title within the meaning of this Section."

The statute is applicable because plaintiff perfected its security interest in the car according to Missouri law, which provides the interest is perfected when recorded on the certificate of title.

"A lien or encumbrance on a motor vehicle or trailer is perfected by the delivery to the director of revenue of the existing certificate of ownership, if any, an application for a certificate of ownership containing the name and address of the lienholder and the date of his security agreement, and the required certificate of ownership fee. It is perfected as of the time of its creation if the delivery of the aforesaid to the director of revenue is completed within thirty days thereafter, otherwise as of the time of the delivery." Mo. Ann. Stat. §301.600(2), at 204 (Vernon 1972).

The Illinois statute orders application of the whole law of Missouri as it authorizes application of Missouri's conflict of laws rules. The next question is whether Missouri's conflict of laws rules send the case back to Illinois. Sections 244 and 248 of the Restatement are relevant in answering this question. Sections 244 states:

"(1) The validity and effect of a conveyance of an interest in a chattel as between the parties to the conveyance are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the parties, the chattel and the conveyance under the principles stated in §6.

(2) In the absence of an effective choice of law by the parties, greater weight will usually be given to the location of the chattel, or group of chattels, at the time of the conveyance than to any other contact in determining the state of the applicable law." (Restatement (Second) Conflict of Laws §244, at 67 (1969).)

Section 248 provides:

"(1) Whether the title to a chattel is embodied in a document is determined by the local law of the state where the chattel was at the time the document was issued.

(2) As between persons who are not both parties to the conveyance:

(a) the effect of a conveyance of an interest in a chattel, title to which is embodied in a validly transferred document, is determined by the law that would be applied by the courts of the state where the chattel was at the time of the conveyance;

(b) the effect of a conveyance of an interest in a document, in which title to a chattel is embodied, is determined by the law that would be applied by the courts of the state where the document was at the time of the conveyance. These courts would usually apply their own local law in determining such questions." (Restatement (Second) Conflict of Laws §248, at 83-84 (1969).)

Section 244 requires an examination of the contacts each State has with the parties, the car, and its transfer.

■ Illinois has the following contacts: the defendant resides in Illinois, the car is in Illinois, and it is the forum State. Plaintiff argues Missouri has the most significant relationship as it has the following contacts: plaintiff is a Missouri corporation doing business in Missouri, the legal owner of the car is a Missouri resident, the car is registered in Missouri, plaintiff perfected the security interest in Missouri and holds the lien there. An additional argument favoring application of Missouri law is that State's interest in protecting its residents holding valid liens perfected in Missouri. Section 248 of the Restatement indicates Missouri law applies as title to the car is embodied in a document, the certificate of title, and the car was in Missouri when the certificate was issued.

We conclude Missouri law applies in plaintiff's replevin action and turn now to the second issue plaintiff raises on appeal, whether the circuit court erred in denying the replevin complaint.

■ The Missouri replevin statute states:

"If the plaintiff claim in his petition the possession of specific personal property, he may, at the time of filing his petition, or at any other time afterward, before the rendition of judgment in the cause, file his affidavit, or the affidavit of some other person in his behalf, showing:

(1) That the plaintiff is the owner of the property claimed, sufficiently describing it, or is lawfully entitled to the possession thereof;

(2) That it is wrongfully detained by the defendant;

(3) The actual value thereof;

(4) That the same has not been seized under any process, execution or attachment against the property of the plaintiff; and

(5) That plaintiff will be in danger of losing his said property, unless it be taken out of the possession of the defendant, or otherwise secured." Mo. Ann. Stat. §533.010, at 407 (Vernon 1972).

Missouri case law indicates replevin "is primarily an action to determine the right of possession [citations], not to try title or the right of property." (*M.F.A. Cooperative Association v. Murray* (Mo. App. 1963), 365 S.W.2d 279, 285.)

"It is incumbent upon a plaintiff in replevin to plead and prove his right to immediate possession of the property at the time the suit was filed and that the defendant was wrongfully detaining it. [Citations.] And while proof of title to or ownership of property is not an inherent element of an action in replevin, title or ownership may become involved incidentally as it may tend to show right of possession. ***

We are further cognizant that as a general rule a plaintiff in replevin must prove that the property sought to be replevined was in possession of the defendant at the time the suit was commenced." (*Fawley v. Bailey* (Mo. App. 1974), 512 S.W.2d 477, 479.)

Missouri courts require plaintiff to "stand on the strength of its own title in [a] replevin action and [plaintiff] cannot recover on the weakness of defendant's title." *Bordman Investment Co. v. Peoples Bank* (Mo. App. 1958), 320 S.W.2d 72, 75.

Success in its replevin action, under Missouri law, required plaintiff to plead and prove a right to immediate possession of the car, the car was in defendant's possession, and defendant wrongfully detained it. Plaintiff's complaint met the pleading requirement. The next question is whether plaintiff proved its right to possession of the car.

■ Plaintiff argues it is entitled to possession of the car because it holds a valid lien on the vehicle which has never been released. Plaintiff admits, however, that a bank employee did sign the release portion of the certificate of title before it was sent, with Sheahan's check, to First Missouri Bank for collection. Plaintiff argues this was a conditional release, contingent on payment of the check by First Missouri Bank. First Missouri Bank returned the check and the title to plaintiff because Sheahan's account contained insufficient funds.

A lien on a motor vehicle is released in Missouri when it has been satisfied.

"Upon the satisfaction of a lien or encumbrance in a motor vehicle or trailer for which the certificate of ownership is in the possession of the lienholder, he shall, within ten days after demand and, in any event, within thirty days, execute a release of his lien or encumbrance, and mail or deliver the certificate and release to the next lienholder named therein, or, if none, to the owner or any person who delivers to the lienholder an authorization from the owner to receive the certificate. The owner may cause the certificate and release to be mailed or delivered to the director of revenue, who shall release the lienholder's rights on the certificate or issue a new certificate." (Mo. Ann. Stat. §301.640(1), at 209 (Vernon 1972).)

This appears to be the sole method for releasing a lien on a motor vehicle in Missouri. Because First Missouri Bank did not honor Sheahan's check, it returned the certificate of title to plaintiff. The lien was never satisfied and thus was never released.

Next plaintiff must show defendant is wrongfully detaining the car. Under Missouri law the sale of the car to defendant was null and void and thus he acquired no interest in it.

"It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless, at the time of the delivery thereof, there shall pass between the parties such certificates of ownership with an assignment thereof, as herein provided, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void." (Mo. Ann. Stat. §301.210(4), at 48 (Vernon Supp. 1989).)

Missouri courts have held this statute must be strictly enforced.

" 'The provisions of the statute that the sale of any motor vehicle which has been registered under the laws of this state without the assignment of the certificate of ownership shall be fraudulent and void is absolute, mandatory and both rigidly and technically enforced.' *** The reasons [for strict enforcement] are: to prevent traffic in stolen automobiles; to aid in the apprehension of criminals; and to protect the innocent and guileless from the machinations and wiles of the wicked." (*Bonnell v. Mahaffey* (Mo. App. 1973), 493 S.W.2d 688, 690-91.)

(See also *Albright v. Uhlig* (Mo. App. 1958), 315 S.W.2d 471, 475; *Horton v. State Farm Fire & Casualty Co.* (Mo. App. 1977), 550 S.W.2d 806, 809; *Executive Jet Management & Pilot Service, Inc. v. Scott* (Mo. App. 1981), 629 S.W.2d 598, 613.) "Failure to strictly com-

ply with the statute means no title passes and the purported buyer has no ownership. [Citations.] This is true, painful as it may be, even where the buyer was guilty of no intentional wrongdoing, *i.e.*, has acted in good faith." *Horton,* 550 S.W.2d at 809.

Plaintiff never released its lien on the car, and the sales transaction through which defendant received the car was fraudulent and void under Missouri law. Defendant is wrongfully detaining the car.

Plaintiff has pleaded and proved the elements necessary to succeed in a replevin action under Missouri law. The decision of the circuit court of Sangamon County dismissing plaintiff's replevin action is reversed.

We now turn to appeal No. 4—89—0036, the dismissal of the third-party complaint. The only issue defendant raises on appeal is whether the circuit court erred in dismissing his third-party complaint for lack of jurisdiction under the Illinois long-arm statute (Ill. Rev. Stat. 1987, ch. 110, par. 2—209(a)(1)).

■ The burden on the party asserting jurisdiction under the long-arm statute is to make a *prima facie* showing that jurisdiction exists under the statute. (*Carlson v. Carlson* (1986), 147 Ill. App. 3d 610, 612, 498 N.E.2d 708, 710; see also *Loos v. American Energy Savers, Inc.* (1988), 168 Ill. App. 3d 558, 561, 522 N.E.2d 841, 843; *Kutner v. DeMassa* (1981), 96 Ill. App. 3d 243, 247, 421 N.E.2d 231, 235.) On review, the appellate court must determine whether defendant met his burden of proof. (*Professional Group Travel, Ltd. v. Professional Seminar Consultants, Inc.* (1985), 136 Ill. App. 3d 1084, 1089, 483 N.E.2d 1291, 1294.) Adams must show: "(1) that defendants transacted business in Illinois, (2) that [the] cause of action arose from this transaction of business and (3) that personal jurisdiction [is] consistent with due process." *Mandalay Associates Limited Partnership v. Hoffman* (1986), 141 Ill. App. 3d 891, 894, 491 N.E.2d 39, 42.

■ Under the long-arm statute a single act may constitute a business transaction for purposes of the statute. (*Financial Management Services, Inc. v. Sibilsky & Sibilsky, Inc.* (1985), 130 Ill. App. 3d 826, 833, 474 N.E.2d 1297, 1303.) "The provision requires essentially that the plaintiff's claim lie 'in the wake of the commercial activities by which [the] defendant [allegedly] submitted to the jurisdiction of Illinois courts.'" *Financial Management Services, Inc.,* 130 Ill. App. 3d at 833, 474 N.E.2d at 1303, quoting *Loggans v. Jewish Community Center* (1983), 113 Ill. App. 3d 549, 557, 447 N.E.2d 919; see also *People v. Parsons Co.* (1984), 122 Ill. App. 3d 590, 597, 461 N.E.2d 658, 664.

"In assessing a nonresident's contacts with this State, '[o]nly

the acts of defendant can be considered in determining whether business was transacted in Illinois.' (*Unarco Industries, Inc. v. Frederick Manufacturing Co.* (1982), 109 Ill. App. 3d 189, 192, 440 N.E.2d 360, 362; see *City of East Moline v. Bracke, Hayes & Miller* (1985), 133 Ill. App. 3d 136, 140, 478 N.E.2d 637, 640; *Chicago Film Enterprises v. Jablanow* (1977), 55 Ill. App. 3d 739, 742, 371 N.E.2d 161, 164.) The determination of whether defendant sufficiently transacted business in Illinois so as to avail himself of the benefits of Illinois law requires consideration of several factors: who initiated the transaction (*Chicago Film Enterprises v. Jablanow* (1977), 55 Ill. App. 3d 739, 371 N.E.2d 161); where the contract was entered into (*Servo Instruments, Inc. v. Fenway Machine Co.* (1980), 92 Ill. App. 3d 509, 415 N.E.2d 34); and where the performance of the contract was to take place (*Woodfield Ford, Inc. v. Akins Ford Corp.* (1979), 77 Ill. App. 3d 343, 395 N.E.2d 1131). While none of these factors has been held to be controlling, each of them has been held to be significant. See *Empress International, Ltd. v. Riverside Seafoods, Inc.* (1983), 112 Ill. App. 3d 149, 153-54, 445 N.E.2d 371." *Gordon v. Tow* (1986), 148 Ill. App. 3d 275, 280-81, 498 N.E.2d 718, 722.

■ Careful examination of the factors enumerated above and the affidavits filed in this case indicates the Illinois court did not have jurisdiction over the third-party defendants under the long-arm statute. Sieben, Inc., and Davault did not transact business in Illinois.

Defendant purchased the car and took delivery of it in Illinois, but from Illinois resident Taylor, not Sieben, Inc., or Davault. The record does not support defendant's assertions that Sheahan acted as an agent for Sieben, Inc., or Davault. In short, defendant has not met his burden of proving jurisdiction over Sieben, Inc., and Davault under the long-arm statute. Given our conclusion on this issue, discussion of the parties' arguments on the effect to be given the various affidavits is unnecessary.

Judgment of the circuit court in appeal No. 4—89—0009 is reversed and remanded; judgment in appeal No. 4—89—0036 is affirmed.

No. 4—89—0009, reversed in part and remanded.
No. 4—89—0036, affirmed.

LUND and STEIGMANN, JJ., concur.