**Scott TURNOCK, Plaintiff-Appellant,**

**v.**

**Arthur COPE, James Jones and George Auchterloine, Defendants-Appellees.**

No. 86–2433.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 17, 1987.

Decided April 10, 1987.

Alan E. Sohn, Wood, Lucksinger & Epstein, Chicago, Ill., for plaintiff-appellant.

Michael Chimitris, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, CUMMINGS and POSNER, Circuit Judges.

BAUER, Chief Judge.

Scott Turnock filed a diversity action in the United States District Court for the Northern District of Illinois, naming three Michigan residents as defendants. The district court granted the defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2), finding that it did not have personal jurisdiction over the defendants. We affirm.

### I

Turnock has the burden of providing sufficient evidence to establish a *prima facie* case of personal jurisdiction. The allegations in his complaint are to be taken as true unless controverted by the defendants' affidavits; and any conflicts in the affidavits are to be resolved in his favor. *O'Hare International Bank v. Hampton*, 437 F.2d 1173, 1176 (7th Cir.1971).

According to Turnock's amended complaint, he was employed as a salesman for Kux Manufacturing Company (Kux), a Michigan corporation with its principal place of business in Michigan, and Northwest Systems, Inc. (Northwest), a division of Kux, and an Illinois corporation with its principal place of business in Illinois. Both companies are in the business of designing, manufacturing and installing building graphics and industrial identifications.

In early 1980, Kux and Northwest were among several companies given the opportunity to design a new "Image Project" for Amoco Oil Company (Amoco) service stations throughout the United States. Kux and Northwest assigned Turnock to present and market their Image Project to Amoco. In return for his services, they agreed to pay him commissions, in fixed percentages, for all sales to Amoco. All of Turnock's duties were to be performed from Northwest's office in Niles, Illinois.

In May 1981, Amoco selected Kux and Northwest as the contractor for its Amoco Image Project. Turnock received commissions for his services on the Project until he was fired in November 1981. He then brought this suit against three Kux employees: Arthur Cope, James Jones and George Auchterloine. He alleges they conspired to wrongfully convert his commission payments, tortiously interfered with his employment relationship and unjustly enriched themselves by retaining his commissions. He claims that he is entitled to commissions on all sales made to Amoco after the date he was fired.

The defendants submitted affidavits which state that they are Michigan residents and citizens, employed by Kux at its Detroit, Michigan office. They have no relationship at all with Northwest. Cope has been a vice-president, marketing and senior vice-president at Kux since January 1981. He is responsible for Kux sales and marketing. James Jones is the vice-president of commercial sales; he is responsible for supervising the Kux sales force. Auchterloine, the manager of the Amoco Identification Account, is responsible for coordinating the Image Project.

All three defendants have visited Illinois on several occasions, but only for the purpose of conducting business and promoting sales on behalf of Kux. Auchterloine has also visited his son and friends in Illinois. None of the defendants owns or rents prop-

erty in Illinois, pays taxes there or has any office, address, telephone number, bank account or agent there. Cope's affidavit states that any money received from Amoco relating to the Image Project is received in Michigan and deposited in a Michigan bank. The defendants' paychecks are also drawn upon a Michigan bank account. Turnock did not submit any affidavits to refute the defendants' affidavits.

## II

A federal district court in a diversity case has personal jurisdiction over a nonresident defendant only if a court of the state in which it sits would have such jurisdiction. *Young v. Colgate-Palmolive Co.*, 790 F.2d 567, 569 (7th Cir.1986). A nonresident individual may be sued in Illinois if (1) he performs one of the acts enumerated in the Illinois long-arm statute, Ill.Rev.Stat. ch. 110 § 2–209, and (2) the minimum contacts required by due process are present. *Id.* If jurisdiction is not proper under the long-arm statute, there is no need to consider whether the requirements of due process have been met. *Id.* at 571. The Illinois Supreme Court has made it clear that long-arm jurisdiction may not be exercised in every situation that the minimum contacts test under the due process clause would permit. *Green v. Advance Ross Electronics Corp.*, 86 Ill.2d 431, 436, 56 Ill.Dec. 657, 660, 427 N.E.2d 1203, 1206 (1981); *Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill.2d 190, 200–01, 57 Ill.Dec. 730, 735, 429 N.E.2d 847, 852 (1981). *See also Small v. Sheba Investors, Inc.*, 811 F.2d 1163, 1164–65 (7th Cir.1987).

In order to establish jurisdiction under the long-arm statute, the plaintiff must allege jurisdictional facts that pertain to the cause of action. *Mott Corp. v. Montanya*, 141 Ill.App.3d 943, 945, 96 Ill.Dec.

284, 285, 491 N.E.2d 98, 99 (1st Dist.1986) (citing *Nelson v. Miller*, 11 Ill.2d 378, 143 N.E.2d 673 (1957)). Turnock argues that the Illinois long-arm statute confers jurisdiction over the defendants because they committed tortious acts in Illinois. *See* § 2–209(2). He emphasizes that all of the discussions leading to his assignment to market the Image Project, as well as the negotiations for the final contract with Amoco, took place in Illinois. Also, all the payments from which he allegedly should have received commissions were sent from Amoco in Illinois and Turnock himself was paid in Illinois. These allegations, however, do not relate to the tortious acts that Turnock claims the defendants committed; they relate to Turnock's contacts with Illinois.

The defendants assert that if they did commit tortious acts, they must have committed them in Michigan. Michigan is where the defendants lived and worked. Although they admitted visiting Illinois, Turnock did not allege that these visits were connected with tortious acts. As the district court noted, at most Turnock's allegations connected the defendants' visits to the underlying contract from which Turnock was to receive commissions. In addition, all of the commission payments Turnock believes the defendants wrongfully took from him would have been drawn upon Kux's bank account which is located in Michigan. Thus, any conspiracy, conversion of funds, interference with Turnock's employment[1] or unjust enrichment could not have taken place in Illinois. Turnock, however, urges a "last act" theory for determining whether the defendants committed a tort in Illinois. He relies upon language in *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 435, 176 N.E.2d 761, 762–63 (1961), that a tort occurs where the last event necessary

---

**1.** The defendants also point out that they could not have interfered with Turnock's employment because he was working at Northwest's office in Illinois. They submitted affidavits which state that they are employed by Kux in Michigan and have no relationship at all with Northwest. Although Turnock's amended complaint states that the defendants "utilize[d] their positions as managing officers of Kux and Northwest in order to cause Kux and Northwest ... to terminate plaintiff's employment....", Turnock did not submit any counter-affidavits to refute the defendants' sworn statements. Turnock asks us to infer that the defendants had some control over Northwest, but we decline to draw such an inference from the vague and conclusory allegations in his amended complaint.

to create liability occurs—usually where the plaintiff is injured. Turnock claims, in this case, that tortious acts occurred in Illinois because it was there that he suffered the financial consequences of the defendants' conduct.

The defendants point out that the Illinois Supreme Court has declared a limitation on the general rule that a tort occurs where its harm is felt. An Illinois court does not acquire jurisdiction under the "last act" doctrine simply because an economic loss is felt in Illinois when all the conduct contributing to the injury occurred outside Illinois. *Green,* 86 Ill.2d at 438, 56 Ill.Dec. at 661, 427 N.E.2d at 1207. An economic injury, by itself, is too remote from the defendant's misconduct to support the conclusion that a tortious act was committed in Illinois. *See Yates v. Muir,* 112 Ill.2d 205, 209–10, 97 Ill.Dec. 394, 396, 492 N.E.2d 1267, 1269 (1986) (Kentucky attorney's failure to arrange for filing of Illinois appeal deprived Illinois plaintiff of retirement income; no tortious act in Illinois); *R.W. Sawant & Co. v. Allied Programs Corp.,* 111 Ill.2d 304, 312, 95 Ill.Dec. 496, 500, 489 N.E.2d 1360, 1364 (1986) (fraudulent misrepresentation and breach of contract by New York corporation resulted in damage to Illinois corporation and Indian exporter; no tortious act in Illinois); *Green,* 86 Ill.2d at 438–39, 56 Ill.Dec. at 661–62, 427 N.E.2d at 1207–08 (misappropriation and conversion of funds in Texas which had as a consequence the reduction in corporate assets in Illinois; no tortious act in Illinois); *Carlson v. Carlson,* 147 Ill.App.3d 610, 614, 101 Ill.Dec. 384, 387, 498 N.E.2d 708, 711 (2d Dist.1986) (Tennessee ex-wife's breach of implied good faith provision in maintenance agreement resulted in economic loss to Illinois ex-husband; assuming actions could be considered tortious, they were not committed in Illinois); *Mott Corp.,* 141 Ill.App.3d at 946, 96 Ill.Dec. at 286, 491 N.E.2d at 100 (unfair competition, conversion and conspiracy to compete committed by New Jersey resident employed by plaintiff's New Jersey subsidiary resulted in economic loss to plaintiff, an Illinois corporation; no tortious act in Illinois). *See also Young,* 790 F.2d at 570–71 (poison pill antitakeover plan adopted in New York by non-Illinois residents and directors of corporation resulted in economic injury to Illinois shareholders; no tortious act in Illinois).

Nevertheless, Turnock argues that the defendants' intent to affect Illinois interests, combined with the economic loss he felt in Illinois is sufficient to establish jurisdiction. He relies upon *Club Assistance Program, Inc. v. Zukerman,* 594 F.Supp. 341 (N.D.Ill.1984), and *International Merchandising Associates, Inc. v. Lighting Systems, Inc.,* 64 Ill.App.3d 346, 20 Ill.Dec. 838, 380 N.E.2d 1047 (1st Dist.1978). Both cases are distinguishable. *Club Assistance* involved claims for fraud and tortious interference with a contract. The court found that money mailed and telephone calls made between a plaintiff in Illinois and a defendant in another state fell within the tortious act section of the Illinois long-arm statute if the defendant intended to affect Illinois interests and intended to communicate his message to Illinois. In *International Merchandising,* the court concluded that the defendants had tortiously interfered with a distributorship agreement in Illinois when the effects of the interference were felt in Illinois and the defendants had met in Illinois in furtherance of their plan to interfere. These cases do not support Turnock's argument because each case involved more than mere economic loss in Illinois.

Turnock had the burden of establishing a *prima facie* case of jurisdiction under the long-arm statute and he did not meet that burden. Since jurisdiction is not proper under the long-arm statute, there is no need to consider whether the minimum contacts required by due process are present. The district court correctly dismissed the amended complaint for lack of jurisdiction.

█ The defendants have requested that we assess fees and double costs against Turnock under Fed.R.App.P. 38 for filing a frivolous appeal. Since the appeal is plainly not frivolous, the request is denied.

AFFIRMED.