ARTHUR YOUNG AND COMPANY *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. CHRISTOPHER D. BREMER *et al.*, Defendants-Appellees and Cross-Appellants.

First District (6th Division)   No. 1—89—0748

Opinion filed April 20, 1990.

McCullough, Campbell & Lane, of Chicago, and Arthur Young & Company, of New York, New York (Carl D. Liggio, Dennis L. Frostic, Michael C. Cook, and Steven R. Smith, of counsel), for appellants.

Grippo & Elden, of Chicago (Gary M. Elden, John R. McCambridge, and Katherine R. Rakowsky, of counsel), for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

This appeal arises out of an action for declaratory and injunctive relief and for damages, brought in the circuit court of Cook County by plaintiffs, Arthur Young & Company and Arthur Young United States (collectively plaintiff) against 12 former employees. The trial court dismissed the action against eight of the defendants, Gary R. Kerslake, Phillip J. Mihok, Raymond B. Jones, James D. Read, Randall E. Smith, Alvin Larry Thomas, William K. Whaling and Nicholas H. Yoo, for lack of personal jurisdiction, and dismissed the action against the remaining four defendants, Christopher B. Bremer, David W. Glogowski, William R. Muns and John L. Knapp, under section 2—619(a)(3) of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(3)). Bremer, Glogowski, Knapp and Muns additionally moved to dismiss on *forum non conveniens* grounds, but this motion was denied. Plaintiff appeals, contending that the trial court's orders of dismissal were improper. Bremer, Knapp, Glogowski and Muns cross-appeal, alleging that the trial court's denial of their mo-

tion to dismiss on *forum non conveniens* grounds was error.

Defendants are all former employees of plaintiff, a national partnership headquartered in New York. Upon accepting employment with plaintiff, some of the defendants signed an employment agreement with plaintiff. These agreements contained a restrictive covenant purporting to bar them, for a period of two years after their termination, from

> "directly or indirectly solicit[ing] or provid[ing], without the consent of the firm, any professional services such as those provided by the firm for anyone who was a client of the firm anytime during the 12 months prior to your leaving the firm and for whom you provided any service as an employee of the firm during the prior five years."

During their employment, each defendant provided management consulting services to one or more of plaintiff's clients. While employed by plaintiff, defendants worked almost exclusively at their clients' places of business, which for the most part were outside of Illinois. Each defendant was assigned to one of plaintiff's operating groups known as Midwest Management Consulting Group (MMCG). MMCG was based in Illinois. During their employment, defendants' residences were as follows:

| | |
|---|---|
| Smith | California |
| Whaling | California |
| Jones | Texas |
| Read | Texas |
| Thomas | Texas |
| Muns | Texas |
| Mihok | Arizona |
| Kerslake | Wisconsin |
| Yoo | Michigan |
| Bremer | Illinois |
| Glogowski | Illinois |
| Knapp | Illinois |

Most of the defendants spent a significant portion of their time working on a project in California for Northrop Corporation's B-2 Division. Northrop is an aerospace and defense contractor which operates through eight independent divisions. The B-2 Division is headquartered in Pico Rivera, California. Defendants' work for Northrop involved an information systems consulting project.

Each of the defendants resigned from plaintiff between May and December 1988. After defendants resigned, plaintiff assigned Richard Van Kirk, a partner in its Los Angeles office, to supervise the comple-

tion of the B-2 project. Plaintiff initially insisted that Northrop could not ask any defendant to continue working on the B-2 project after he left plaintiff's employ. Northrop B-2 employees, however, advised plaintiff that it was imperative to keep the team intact in order to insure success. Plaintiff, through its Los Angeles office, entered into subcontracting arrangements with Read, Thomas, Whaling and Jones. The subcontracting arrangements expired on December 31, 1988.

Each of the defendants began to work for Technology Solutions Company (TSC), a Chicago-based firm. In October 1988, TSC responded to Northrop Electronics Division's request for proposals for certain management consulting services by submitting a bid. Plaintiff, through its Los Angeles office, also bid on the Northrop project. In late December, Northrop awarded the contract to TSC. All Northrop employees having knowledge of the bidding process, contract negotiations and the work performed to date are located in California.

On January 4, 1989, defendants filed a suit against plaintiff in California State court. The complaint was served on plaintiff later that day. Defendants sought a declaratory judgment that plaintiff's restrictive covenants could not be enforced to stop them from working in California for Northrop. Plaintiff answered the complaint and filed a counterclaim. A discovery supervision and scheduling order was entered, and defendants have deposed three witnesses pursuant to it. Subsequently, defendants and TSC filed an amended complaint. Plaintiff has moved to dismiss the amended complaint in favor of New York litigation which it filed against TSC.

Also on January 4, 1989, plaintiff filed a suit against Muns in Illinois. Plaintiff did not serve the complaint. Rather, after receiving notice of the California suit, plaintiff filed its first amended complaint, naming as defendants the 12 California plaintiffs. Plaintiff's action seeks an injunction preventing defendants from working in California for Northrop. Plaintiff subsequently filed second, third and fourth amended complaints, each adding new claims which either modified or deleted old ones.

Plaintiff appeals the trial court's orders of dismissal. We first will address the propriety of the order dismissing 8 of the 12 defendants for lack of personal jurisdiction.

. Plaintiff contends that each of the eight defendants who raised jurisdictional objections engaged in significant activity in Illinois while under the employ of plaintiff and, subsequently, while under the employ of TSC. Plaintiff maintains that an analysis of the contracts between Illinois and each of these defendants discloses conduct that is more than sufficient to subject the defendants to personal jurisdiction

in Illinois under the long-arm statute. Ill. Rev. Stat. 1987, ch. 110, par. 2—209.

■■ ■ The Illinois long-arm statute provides in relevant part as follows:

"(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

(1) The transaction of any business within this State;
(2) The commission of a tortious act within this State." (Ill. Rev. Stat. 1987, ch. 110, par. 2—209(a).)

The long-arm statute is applicable only when the cause of action arises from the activity which serves as the basis of jurisdiction. (Ill. Rev. Stat. 1987, ch. 110, par. 2—209(c).) The purpose of the Illinois long-arm statute is to assert jurisdiction over nonresidents to the extent permitted by the due process clause. (*Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 427 N.E.2d 1203.) Thus, the reach of the long-arm statute may lie within or may touch, but cannot extend outside, the fence marked out by due process requirements as defined in *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154. If a party's actions are not embraced by the long-arm statute, application of the tests the Supreme Court has fashioned to determine whether the assertion of jurisdiction by a State over a nonresident is prohibited by due process safeguards is unnecessary. (*Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 427 N.E.2d 1023) Accordingly, our analysis first will consider whether each defendant falls within the ambit of the long-arm statute.

■ Initially, we note that when a defendant contests personal jurisdiction, the party asserting it has the burden of demonstrating a *prima facie* case that jurisdiction exists under the long-arm statute. (*People v. Parsons Co.* (1984), 122 Ill. App. 3d 590, 461 N.E.2d 658.) Here, plaintiff alleges that each defendant either transacted business or committed tortious acts in Illinois within the meaning of the long-arm statute.

■ Generally, "transaction of business" within the meaning of the long-arm statute means business in the commercial sense. (*Carlson v. Carlson* (1986), 147 Ill. App. 3d 610, 498 N.E.2d 708.) Thus, plaintiff's claim must be one which lies in the wake of commercial activities by which defendants submitted to the jurisdiction of Illinois courts. (See, *e.g.*, *Financial Management Services, Inc. v. Sibilsky &*

*Sibilsky, Inc.* (1985), 130 Ill. App. 3d 826, 474 N.E.2d 1297; *Loggans v. Jewish Community Center* (1983), 113 Ill. App. 3d 549, 447 N.E.2d 919.) Further, plaintiff must allege that some definite act by defendants occurred in Illinois. See *Mott Corp. v. Montanya* (1986), 141 Ill. App. 3d 943, 491 N.E.2d 98.

■ A defendant transacts business in Illinois when substantial performance of contractual duties is to be rendered in Illinois or when a defendant invokes the benefits and protections of Illinois law in the contractual relationship. (*Carlson v. Carlson* (1986), 147 Ill. App. 3d 610, 498 N.E.2d 708; *First National Bank v. Boelcskevy* (1984), 126 Ill. App. 3d 271, 466 N.E.2d 1182.) When a contract which is the basis of the plaintiff's claim was entered into in Illinois, the defendant's Illinois activities can suffice to sustain jurisdiction. (*Financial Management Services, Inc. v. Sibilsky & Sibilsky, Inc.* (1985), 130 Ill. App. 3d 826, 474 N.E.2d 1297.) Nonetheless, the determination of whether a defendant sufficiently transacted business in Illinois requires consideration of several factors, including who initiated the transaction; where the contract was entered into; and where the performance of the contract was to take place. While none of these factors has been held to be controlling, each of them has been held to be significant. *Gordon v. Tow* (1986), 148 Ill. App. 3d 275, 498 N.E.2d 718.

■ In order to sustain jurisdiction based on the commission of a tortious act in Illinois, the plaintiff must allege that the defendant performed an act or omission which caused an injury in Illinois and that the act or omission was tortious in nature. (*Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 427 N.E.2d 1203.) Alternatively, the requirements of the tortious act provision of the long-arm statute may be met if plaintiff demonstrates an economic injury in Illinois coupled with activity indicating an intent to affect Illinois interests. (*Club Assistance Program, Inc. v. Zukerman* (1984), 594 F. Supp. 341.) For purposes of the tort provision of the long-arm statute, the place of the wrong is the place where the last event necessary to hold the actor liable takes place. *Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, 176 N.E.2d 761.

With these general principles in mind, we find that the trial court properly dismissed the complaints. We will, however, examine the activities of each defendant in order to demonstrate that these activities do not permit jurisdiction to lie against him in Illinois.

Plaintiff alleges that defendant William Whaling committed tortious acts in Illinois by aiding and abetting Woodrow Chamberlain, a former partner with plaintiff, in violation of his obligations under a partnership agreement. (In its fourth amended complaint, plaintiff also

alleged that Whaling had transacted business in Illinois. The trial court found that Whaling had not transacted business in Illinois, and plaintiff did not contest this finding on appeal.) Plaintiff argues that various telephone calls which Whaling made to Chamberlain in Illinois support "tortious act" jurisdiction.

Whaling testified that he contacted Chamberlain in Illinois by telephone regarding possible employment with TSC. The two men did not discuss salary or job responsibilities. Plaintiff maintains that this discussion of job opportunities with TSC played an integral role in the "aiding and abetting" of Chamberlain's violations of his obligations under his partnership agreement with plaintiff. Even assuming "aiding and abetting" is an independent cause of action grounded in tort and assuming Chamberlain's actions violated his partnership agreement with plaintiff, we nonetheless do not view an inquiry by Whaling regarding a job as encouragement to Chamberlain to breach a preexisting employment agreement. Our review of the record reveals no indication that Whaling attempted to aid or abet Chamberlain in violating any duty owed plaintiff. Thus, no contact which Whaling had with Illinois is related to the alleged tortious conduct. Accordingly, we find no basis for jurisdiction based on the commission of a tortious act in Illinois.

As to Randall Smith, plaintiff alleged jurisdiction based on transaction of business in Illinois and on commission of a tortious act in Illinois, but on appeal, contends only that jurisdiction based on the commission of a tortious act applies. Specifically, plaintiff contends that Smith engaged in activities in Illinois which resulted in tortious interference with prospective business advantage and in aiding and abetting.

Smith's employment with plaintiff was the result of negotiations which took place in plaintiff's Los Angeles office. Except for one three-day engagement in Illinois, Smith worked in California on various Northrop projects the entire year he was employed by plaintiff. Plaintiff maintains, however, that Smith's continued employment on the Northrop project, coupled with phone calls which Smith made to Chamberlain in Illinois, amount to tortious interference with prospective business opportunity.

An action for interference with prospective economic advantage requires existence of a valid business relationship or expectancy, knowledge of relationship or expectancy on the part of the interferor, intentional interference inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the party whose relationship or expectancy has been disrupted. (*Galinski v.*

*Kessler* (1985), 134 Ill. App. 3d 602, 480 N.E.2d 1176.) We do not believe that any actions on the part of Smith *in Illinois* give rise to interference with prospective economic advantage. As the trial court noted, "Here, the statement they [Smith] made in Illinois is not the tort. The tort is going to work for these people [Northrop] *** [a]nd that didn't take place in Illinois." We agree with the trial court's analysis. The tortious act of which plaintiff complains occurred in California, not in Illinois.

Plaintiff nonetheless suggests that it need not meet the literal requirement of the statute if it can satisfy an alternative, two-pronged test: economic injury in Illinois and activity indicating an intent to affect Illinois interests. (See *Club Assistance Program, Inc. v. Zukerman* (1984), 594 F. Supp. 341.) Plaintiff, however, fails to meet this alternative, two-pronged test.

First, plaintiff is a national partnership with headquarters in New York. MMCG is a profit center of plaintiff, but is not a separate legal entity. Thus, MMCG did not, and indeed cannot, suffer any legally cognizable injury. Significantly, plaintiff brought suit in the name of the partnership, not in the name of its midwest profit center, MMCG. Any economic injury suffered by plaintiff occurred in New York.

Additionally, plaintiff fails to meet the requirements of the second prong of the *Club Assistance* test. That is, plaintiff failed to demonstrate an intent on the part of Smith to affect Illinois interests. Although plaintiff accurately notes that Smith contacted Chamberlain by telephone several times in Illinois, this fact, absent more, cannot operate to confer jurisdiction in Illinois. Smith was unable to recall the substance of several of the phone calls which he had with Chamberlain. He testified, however, that his conversations with Chamberlain prior to Smith's leaving plaintiff were regarding his general unhappiness working for plaintiff. Subsequent to leaving plaintiff's employ, Smith's conversations with Chamberlain focused on his employment with TSC, but did not include any discussion of Smith's clients. These conversations can in no way be construed as designed to affect plaintiff's Illinois interests. Rather, these discussions can be construed only as mere contacts and not the tortious acts necessary to support plaintiff's claims of conversion and contractual interference. See *Turnock v. Cope* (1987), 816 F.2d 332.

In our view, plaintiff has failed to establish tortious acts sufficient to permit Illinois to exercise jurisdiction over Smith based on tortious interference with prospective business advantage. Similarly, plaintiff has failed to establish that Smith's phone calls to Chamberlain from California in any way aided and abetted Chamberlain in breaching his

agreement with plaintiff. Our review of the record reveals no indication that these conversations ever focused on Chamberlain's position with plaintiff. Thus plaintiff cannot satisfy its burden of proving personal jurisdiction on either of its tort theories against Smith.

Plaintiff contends that Illinois has jurisdiction over Raymond Jones based on transaction of business in Illinois and on the commission of a tortious act in Illinois.

Plaintiff contacted Jones in Texas concerning possible employment. Plaintiff again contacted Jones in Texas to set up a meeting in Los Angeles to further discuss possible employment. At that meeting, the parties discussed a "broad range" of potential salary figures. Plaintiff then called Jones in Texas and asked him to come to Chicago for interviews. Jones agreed to come for the day, and plaintiff reimbursed him for all expenses of this trip. In Chicago, Jones and plaintiff discussed salary figures, but did not reach an agreement. When Jones left that day, Plaintiff had not yet extended him an offer of employment. Subsequently, Jones received a written offer and contract from plaintiff at his home in Texas. The contract included an annual salary figure which was less than Jones had sought during his interview. Jones signed the contract in Texas, conditioning his acceptance on not being required to move his residence from Texas. While employed by plaintiff, Jones worked exclusively in California. Since resigning from plaintiff, Jones has made numerous business calls from California to TSC in Illinois.

Jones' activities, insofar as they relate to the negotiation of his employment contract with plaintiff, do not rise to the level of activity needed to permit Illinois to exercise jurisdiction over him. The substance of the transaction is centered outside of Illinois, and the mere fact that he negotiated a portion of his contract in Illinois does not alter the fact that the contract was most directly related to another forum.

■ This court stated in *United Air Lines, Inc. v. Conductron Corp.* (1979), 69 Ill. App. 3d 847, 387 N.E.2d 1272, that several factors, including the nature of the business transaction, the applicability of Illinois law, the contemplation of the parties, and the availability of witnesses, all should be considered when determining where jurisdiction properly lies. If jurisdiction is to lie in Illinois, there must be a substantial connection between Illinois and the act or transaction that gives rise to jurisdiction. (*United Air Lines, Inc. v. Conductron Corp.* (1979), 69 Ill. App. 3d 847, 387 N.E.2d 1272. We find no such substantial connection here.

It is true that a single act may be sufficient to find that business was transacted within this State. However, that single act must be the

act which forms the basis of plaintiff's claim. (*Financial Management Services, Inc. v. Sibilisky & Sibilisky, Inc.* (1985), 130 Ill. App. 3d 826, 474 N.E.2d 1297. Moreover, the quality of the act must be substantial, "most intimately connected" with the controversy, and not *de minimis*. *United Air Lines, Inc. v. Conductron Corp.* (1979), 69 Ill. App. 3d 847, 387 N.E.2d 1272; *Mandalay Associates Limited Partnership v. Hoffman* (1986), 141 Ill. App. 3d 891, 491 N.E.2d 39; *First National Bank v. Boelcskevy* (1984), 126 Ill. App. 3d 271, 466 N.E.2d 1182.

Here, Jones' act in Illinois was *de minimis*. His salary negotiations do not form any part of the basis of plaintiff's claim, the restrictive covenant. As the trial court noted, there is no evidence in the record as to where Jones' restrictive covenant was negotiated. Moreover, Jones' salary negotiations with plaintiff in Chicago were neither extensive nor substantial. In fact, Illinois was neither the exclusive nor the conclusive site of Jones' salary negotiations. Finally, Jones' salary negotiations do not evidence an intent on his part to purposely avail himself of the privilege of conducting activities within Illinois. (See *Gordon v. Tow* (1986), 148 Ill. App. 3d 275, 498 N.E.2d 718.) Rather, Jones' salary and other negotiations evidence an intent to avail himself of the privilege of conducting activities in California.

We find that the trial court properly found it did not have jurisdiction over Jones based on transaction of business. Jones' activities in Illinois were minimal and were not related to the cause of action which plaintiff asserts against him.

Nor did the trial court have jurisdiction over Jones based on the commission of a tortious act in Illinois. There is no evidence in the record which would suggest that Jones' telephone conversations with Chamberlain were regarding any design on the part of Jones and Chamberlain to interfere with plaintiff's preexisting or prospective business relationship with Northrop. And, although Jones' continued work on the Northrop project while employed by TSC may amount to interference with prospective business advantage, that work takes place in California, and not in Illinois. Accordingly, this actual work on the Northrop project cannot be considered for purposes of analyzing the jurisdictional issue. Moreover, Jones testified that since beginning employment with TSC, he has made several telephone calls into Illinois, but that he cannot recall the substance of those telephone calls. Thus, those calls cannot serve as a jurisdictional basis for haling Jones into the Illinois courts, and we find that there is no proper basis for asserting jurisdiction over Jones.

Similarly, we find that there is no proper basis for asserting juris-

diction over Larry Thomas. Plaintiff alleges that Thomas transacted business in Illinois and that Thomas committed a tortious act in Illinois. Plaintiff maintains that these actions are sufficient to permit the Illinois courts to exercise jurisdiction over Thomas.

Thomas is a resident of Texas. Plaintiff contacted Thomas in Texas concerning possible employment, specifically in regard to the Northrop project. In that initial conversation, plaintiff and Thomas discussed salary range and various other aspects of the position. Plaintiff contacted Thomas approximately two weeks later and asked him to come to Chicago for interviews. Thomas came to Chicago for one afternoon of interviews. At that time, Thomas informed plaintiff that he would be unwilling to relocate to Chicago. Chamberlain contacted Thomas in Texas and offered Thomas a job with plaintiff. Salary was negotiated and agreed upon during this telephone call, and at the end of the conversation, Thomas accepted the offer. A written offer subsequently was sent to Thomas in Texas. Thomas signed the offer in Texas. Except for a one-day visit to Chicago to complete certain forms and to process in as an employee, Thomas spent his entire period of employment with plaintiff working in California on the Northrop project.

Plaintiff alleges that Thomas' contacts with Illinois are sufficient to establish jurisdiction in Illinois under a transaction of business theory. A review of the record, however, reveals no evidence that any contact which Thomas had with Illinois was in any way related to the restrictive covenant which is the subject of this suit. There is no indication that the pertinent parts of Thomas' employment contract were negotiated in Illinois. Significantly, the only evidence of any negotiations is that of the salary negotiation which occurred during Chamberlain's telephone call to Thomas. (See *City of East Moline v. Bracke, Hayes & Miller* (1985), 133 Ill. App. 3d 136, 478 N.E.2d 637 (unilateral acts of the plaintiff may not confer jurisdiction over the defendant to the State).) Moreover, there is no showing that the restrictive covenant was negotiated during Thomas' interview in Chicago, nor that it was discussed during his processing. Further, Thomas recalled no telephone conversations with anybody in Illinois regarding the Northrop project either while he was employed by plaintiff or by TSC. He testified that he discussed Northrop with other defendants, but only in response to a query regarding what project he was working on. He recalled no discussion of TSC taking over the Northrop work from plaintiff. In view of the fact that Thomas' contacts with Illinois were in no way related to the restrictive covenant at issue here, we find that the trial court correctly found that it did not have jurisdiction over Thomas based on the transaction of business.

Plaintiff additionally alleges that Illinois can properly exercise jurisdiction over Thomas based on his commission of a tort in Illinois. Specifically, plaintiff alleges that Thomas committed the tort of fraudulent inducement in Illinois by telling Chamberlain about his subcontract agreement. Further, plaintiff alleges that Thomas' telephone calls into Illinois constitute tortious interference with prospective business relations.

■ Thomas did not engage in fraudulent inducement in Illinois when he told Chamberlain about his subcontract agreement. In order to establish the tort of fraud, a plaintiff must allege that the wrongdoer knowingly misrepresented a material fact for the purpose of inducing the plaintiff to act, that the plaintiff reasonably believed the misrepresentation to be true, and that the plaintiff detrimentally relied upon the misrepresentation. (*Northwest Federal Savings & Loan Association v. Weisberg* (1981), 97 Ill. App. 3d 470, 422 N.E.2d 1101.) Here, plaintiff alleges that it was fraudulently induced into entering the subcontract agreement due to Thomas' undisclosed intention of diverting to TSC the monies received under the subcontract agreement.

Thomas did discuss the terms of the subcontract with Chamberlain, but this conversation occurred after he signed the subcontract agreement. Thomas specifically stated that he did not remember talking to Chamberlain before he put his signature on the subcontract agreement. Moreover, Thomas at no time indicated that any conversation which he had with Chamberlain was in regard to Thomas' use of the monies earned under the subcontract agreement. In light of this testimony, we cannot find a basis to infer that in any Illinois contact, Thomas knowingly failed to disclose his intention to sign over to TSC the payments he received under the subcontract with the purpose of inducing plaintiff to act. Further, we find no basis to infer that plaintiff relied on Thomas' failure to disclose this intention as evidence of his intent not to turn the monies over to TSC. That is, there is no indication that plaintiff sought to prohibit payments by Thomas to TSC at the time it entered into the subcontract with Thomas. (In contrast, when plaintiff renewed other subcontract agreements, it inserted a provision prohibiting any direct or indirect payment to TSC of amounts received under the subcontract.) Finally, any reliance which plaintiff may have placed on Thomas' omission was unreasonable in light of the surrounding circumstances. That is, plaintiff was aware that Thomas was employed by TSC and thus should have been on notice that Thomas and TSC likely had a collateral agreement. (See *Brainerd v. Balish* (1987), 164 Ill. App. 3d 836, 518 N.E.2d 317 (fraud count could be disregarded for jurisdictional purposes when it was

clear that reliance was unreasonable).) Most significantly, we note that plaintiff asserts only one connection with Illinois with regard to its fraudulent inducement count, the telephone call in which Thomas informed Chamberlain of the terms of his already executed subcontract. In view of the foregoing analysis, this telephone call alone cannot establish contacts sufficient to permit Illinois to exercise jurisdiction over Thomas on a fraudulent inducement theory.

Similarly, we find that Thomas' telephone calls to Chamberlain do not establish contacts sufficient to confer jurisdiction to Illinois on a tortious interference with prospective business advantage theory. Thomas stated that he never discussed in Illinois the possibility of TSC taking over the Northrop work from plaintiff. Thus, any tort concerning interference with plaintiff's business did not take place in this forum and, accordingly, cannot serve as a basis of jurisdiction.

Plaintiff next contends that Illinois properly may exercise jurisdiction over defendant Nicholas Yoo based on both the transaction of business and the commission of a tortious act.

Yoo is a resident of Michigan. Yoo contacted plaintiff at its Detroit office regarding possible employment. His interview took place in Detroit. Plaintiff extended its offer of employment by letter to Yoo in Michigan, and Yoo accepted by telephone. Yoo never signed an employment contract. Yoo initially reported to plaintiff's MMCG in Detroit. After consolidation of plaintiff's Chicago and Detroit offices, Yoo reported to the Chicago office, but retained his office and secretary in Detroit. Yoo worked on a prospective client in Illinois for two months and spent the balance of his employment with plaintiff in California working on the Northrop project. Shortly before he resigned from plaintiff, Yoo contacted Chamberlain in Illinois and asked for a job with TSC. Yoo and Chamberlain did not discuss the specifics of the position, and at the time Yoo resigned from plaintiff, he did not know what he would be doing at TSC. Yoo acknowledged that he made several telephone calls to Chamberlain in Illinois, but stated that Northrop was not discussed.

With regard to plaintiff's transaction of business theory, we note that although it is true that Yoo spent two months in Illinois during his 30-month period of employment with plaintiff, the work which Yoo did during this time period is in no way related to the cause of action under consideration. (See *Carlson v. Carlson* (1986), 147 Ill. App. 3d 610, 498 N.E.2d 708 (to constitute the transaction of business, the activity must be of a commercial nature and the cause of action must be directly connected with that activity).) That is, this suit concerns the alleged breach of a restrictive covenant, and plaintiff has failed to dem-

onstrate that it, or any other contract term, was negotiated in Illinois or was otherwise related to Illinois. Moreover, the fact remains that the overwhelming majority of Yoo's work for plaintiff was conducted in California on the Northrop project. Yoo's other work for plaintiff is not the subject of this suit, and we decline to consider it the type of substantial connection required to find an Illinois transaction.

The tortious conduct which plaintiff attributes to Yoo consists of telephone conversations which Yoo had with Chamberlain and which plaintiff maintains were designed to aid and abet Chamberlain's breach of his partnership agreement with plaintiff. A review of Yoo's testimony reveals no substantiation for plaintiff's claim. Yoo did contact Chamberlain several times in Illinois; nonetheless, there is no indication that during these conversations Yoo and Chamberlain discussed Chamberlain's agreement with plaintiff, or that Yoo attempted to assist Chamberlain in breaking that agreement. The trial court properly determined that it did not have jurisdiction over Yoo.

Plaintiff next claims that Illinois has jurisdiction over James Read based on four theories: transaction of business, tortious interference with prospective business advantage, fraudulent inducement, and aiding and abetting. We find that none of these theories operate to permit Illinois to exercise jurisdiction over Read.

Read is a resident of Texas. Read contacted plaintiff regarding possible employment, and three to four months after this initial contact, plaintiff's Los Angeles office extended him an offer. (Read had interviewed for the position in Chicago. This interview resulted in an offer which was rescinded by plaintiff prior to Read's acceptance.) Read telephoned plaintiff's Los Angeles office to accept. Except for a three-day project in Illinois, Read spent the entire 18 months of his employment with plaintiff working outside Illinois.

Read had but two contacts with Illinois. The first was a one-day interview which led to an offer that subsequently was rescinded. (See *Cook Associates, Inc. v. Lexington United Corp.* (1981), 87 Ill. 2d 190, 429 N.E.2d 847 (negotiations that led to offer which was rejected did not establish jurisdiction for purposes of claim arising out of later offer that was accepted).) The second contact was a three-day work project on a client unrelated to Northrop. These two brief contacts with Illinois, unrelated to the cause of action under our consideration, simply do not rise to the level of activity necessary to establish the transaction of business and, accordingly, cannot serve to confer jurisdiction to the Illinois courts.

Moreover, we find that Read did not commit a tort in Illinois and thus cannot be haled into the Illinois courts under the tortious conduct

provision of the long-arm statute. We find no basis for plaintiff's assertion that Read's telephone conversations with Chamberlain were related to TSC taking over the Northrop project from plaintiff. Thus, plaintiff has failed to demonstrate that Read engaged in tortious interference with prospective business advantage in Illinois. Moreover, there is no indication that any of these conversations was designed to encourage Chamberlain to breach his partnership agreement, or to facilitate that breach in any way. Thus, plaintiff has failed to demonstrate that Read aided and abetted Chamberlain. Finally, there is no indication that any of these conversations was in regard to an attempt to fraudulently induce plaintiff into entering into the subcontract agreements. Specifically, there is no indication that Read purposefully failed to disclose his intention of signing over to TSC all payments which he received under the subcontracts. As noted previously, the record does not reveal any attempt on plaintiff's part to prohibit these payments over to TSC. Thus, plaintiff has failed to demonstrate that any action by Read in Illinois fraudulently induced plaintiff to enter into the subcontract agreements.

Plaintiff asserts that Illinois properly may exercise jurisdiction over Philip J. Mihok based on the transaction of business in Illinois and on the commission of tortious conduct in Illinois.

Mihok is a resident of Arizona. He contacted Chamberlain from Arizona concerning employment with plaintiff. Mihok interviewed in Chicago with Chamberlain, and an employment offer was sent to him in Arizona. Mihok accepted the offer by letter to Chamberlain from Arizona. He was processed at the Chicago office and was given a draft employment agreement, which contained a restrictive covenant that Mihok modified. Mihok recalled having more than one discussion with Chamberlain regarding the restrictive covenant provision of the proposed employment agreement. He stated that these discussions were face to face and all took place in California. Chamberlain advised Mihok either in Arizona or California that plaintiff rejected Mihok's modifications. Plaintiff subsequently sent an employment contract to Mihok in Arizona, where he signed it. While employed by plaintiff, Mihok worked on the Northrop project in California except for a one-day assignment in Illinois.

Although Mihok discussed compensation in Chicago, the negotiations over his restrictive covenant, the contract term at issue in this litigation, all took place outside Illinois. Further, Mihok's contacts with Illinois were not substantial, and he performed his contract primarily in California. Thus, he cannot be said to have transacted business in Illinois in connection with this lawsuit. Additionally, Mihok cannot be

said to have committed a tort in Illinois. Mihok stated that he did have several conversations with Chamberlain, but at no time recalled discussing Northrop or discussing Chamberlain's employment with plaintiff. Thus, plaintiff has failed to demonstrate that any contact which Mihok had with Illinois was related to aiding and abetting Chamberlain to breach his partnership agreement with plaintiff.

Plaintiff lastly contends Illinois has jurisdiction over Gary Kerslake. Plaintiff maintains that Kerslake both transacted business in Illinois and committed a tortious act in Illinois.

Kerslake is a resident of Wisconsin. Plaintiff contacted Kerslake in Wisconsin with regard to employment. During this initial contact, Kerslake and Chamberlain arrived at an agreement concerning potential salary. The interview was conducted in Wisconsin. Chamberlain called Kerslake in Wisconsin to extend an offer and subsequently sent a letter confirming the terms of employment. Kerslake signed the contract in Wisconsin. While employed by plaintiff, Kerslake spent three months in Illinois working on various projects unrelated to Northrop. The balance of his 25-month employment was spent in California working on the Northrop project.

Kerslake's contacts with Illinois are insufficient to establish the transaction of business within the meaning of the long-arm statute. The record reveals that Kerslake negotiated the terms of his contract in the initial telephone contact which plaintiff made to him in Wisconsin. (See *City of East Moline v. Bracke, Hayes & Miller* (1985), 133 Ill. App. 3d 136, 478 N.E.2d 637.) The record, however, is bare of any reference to negotiation of the restrictive covenant. The majority of Kerslake's employment was spent in California, and the time which he spent in Illinois was unrelated to the cause of action before us. That is, Kerslake's contact with Illinois was *de minimis* insofar as this lawsuit is concerned. Although he spent three months in Illinois, the work which he did during those three months is not sufficiently related to the alleged breach of restrictive covenant caused by Kerslake's affiliation with the Northrop project while employed by TSC. Kerslake's contacts with Illinois do not rise to the level of transaction of business.

Furthermore, Kerslake's contacts with Illinois do not establish the commission of a tort in Illinois. Kerslake stated that he spoke by telephone with Chamberlain several times, but that he never had any discussions regarding Northrop or regarding how plaintiff would handle the Northrop account after he and the other consultants left. Plaintiff has failed to demonstrate that any conversation which Kerslake had with Chamberlain aided and abetted Chamberlain in breaching his partnership agreement.

■■ In sum, we find that the trial court properly found that plaintiff failed to establish a *prima facie* case that jurisdiction exists as to Whaling, Smith, Jones, Thomas, Yoo, Read, Mihok and Kerslake. We affirm the court's order granting those defendants' motions to quash service and to dismiss for lack of personal jurisdiction.

Plaintiff next contends that the trial court erred in granting the motions of defendants Muns, Bremer, Knapp and Glogowski to dismiss pursuant to section 2—619(a)(3) of the Illinois Code of Civil Procedure. Plaintiff maintains that Illinois has a legitimate and substantial relation to the present litigation. Plaintiff argues that in filing their motions to dismiss, Muns, Bremer, Knapp and Glogowski were engaged in forum shopping.

■■ Section 2—619(a)(3) provides that a defendant may file a motion for dismissal of an action on the basis that there is another action pending between the same parties for the same cause. (Ill. Rev. Stat. 1987, ch. 110, par. 2—619(a)(3).) One of the purposes of section 2—619(a)(3) is to avoid duplicative litigation. (*A.E. Staley Manufacturing Co. v. Swift & Co.* (1980), 84 Ill. 2d 245, 419 N.E.2d 23.) A dismissal pursuant to section 2—619(a)(3) is discretionary with the trial court (*A.E. Staley Manufacturing Co. v. Swift & Co.* (1980), 84 Ill. 2d 245, 419 N.E.2d 23), and in exercising this discretion, the court is to weigh the prejudice that would result to a nonmovant if the motion is granted against the policy of avoiding duplicative litigation. (*Kellerman v. MCI Telecommunications Corp.* (1986), 112 Ill. 2d 428, 493 N.E.2d 1045.) A trial court's decision on a motion to dismiss will not be disturbed absent an abuse of discretion. *Kellerman v. MCI Telecommunications Corp.* (1986), 112 Ill. 2d 428, 493 N.E.2d 1045.

■■ We find that here, the trial court did not abuse its discretion in granting defendants' section 2—619(a)(3) motion. It is clear that the Illinois litigation involves the same parties and the same cause as the California action. Each of plaintiff's claims against each defendant is interrelated to the core issue regarding the alleged breach of the restrictive covenant. Plaintiff nonetheless urges this court to find that Illinois has a legitimate and substantial relation to this lawsuit sufficient to outweigh the benefits of avoiding a multiplicity of actions. Plaintiff cites to numerous contacts between this State and Muns, Bremer, Knapp and Glogowski.

Plaintiff relies on our supreme court's decision in *A.E. Staley Manufacturing Co. v. Swift & Co.* in support of its contention that in some circumstances, it is appropriate to permit an Illinois action to proceed simultaneously with litigation in another State between the same parties. Plaintiff correctly interprets the *Staley* decision as

standing for that proposition. More specifically, however, the *Staley* court noted that multiple actions involving the same operative facts may be maintained when the trial court, *in a sound exercise of its discretion,* determines that both actions should proceed. The *Staley* court examined a situation in which the trial court determined it had no discretion and therefore failed to conduct the proper analysis. Thus, when analyzing the propriety of granting the section 2—619(a)(3) motion, the *Staley* court had no need to defer to the conclusions of the trial court and was able to review the situation *de novo.*

This court is not similarly situated. That is, the trial court here conducted a thorough analysis of the propriety of granting defendants' section 2—619(a)(3) motion. Our review of the record reveals that the trial court continuously noted the substantial connection between the cause of action and the competing forum. Further, the trial court noted that the possibility of completely resolving the controversy was not only greater in the competing forum, but that it was likely that the competing forum was the only forum in which the controversy could be completely resolved. Moreover, the trial court properly found it did not have jurisdiction over 8 of the 12 defendants. The court therefore concluded that the action necessarily would be litigated in California, at least as to those eight defendants. Finally, the trial court specifically stated that it was balancing two competing interests, but that the interest of Illinois was not so great as to allow two actions, between the same parties, over the same issue, to proceed to verdict.

In view of the trial court's analysis, involving careful consideration of the relevant factors, we cannot find an abuse of that court's discretion. Accordingly, we will not disturb the decision to grant defendants' section 2—619(a)(3) motion.

Because we have determined that the trial court's orders granting the motion to dismiss for lack of personal jurisdiction and on the basis of section 2—619(a)(3) were proper, we need not address defendants' cross-appeal regarding the propriety of the trial court's order denying their motion to dismiss on *forum non conveniens.*

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

LaPORTA, P.J., and EGAN, J., concur.