**CONTINENTAL BANK N.A., Plaintiff,**

v.

**Robinson EVERETT, Kathrine Everett, George Lyles, and J.H. Froelich, Defendants.**

**No. 90 C 1476.**

United States District Court, N.D. Illinois, E.D.

Aug. 2, 1990.

Howard J. Roin, Lynn D. Thesing, Mayer, Brown & Platt, Chicago, Ill., for plaintiff.

Robert E. Wiss, Patrick R. Gabrione, Foran, Wiss & Schultz, Chicago, Ill., for defendants Everett.

Ronald J. Guild, Michael J. Kralovec, William H. Hrabak, Jr., Feiwell, Galper & Lasky, Ltd., Chicago, Ill., for defendant Froelich.

## ORDER

BUA, District Judge.

Defendants Kathrine Everett, Robinson Everett, and J.H. Froelich have moved to dismiss this case for lack of personal jurisdiction. For the reasons stated herein, defendants' motion to dismiss is denied.

### I. FACTS [1]

Plaintiff Continental Bank N.A. ("Continental") is a national banking association which maintains its principal place of business in Chicago, Illinois. In 1984, Continental made a $4,200,000 loan to Guilford Telecasters, Inc. ("Guilford"), a North Carolina corporation. Guilford obtained the loan to operate a television station in North Carolina.

On January 1, 1984, the parties executed a loan agreement. The loan agreement provides that all payments are to be made to Continental in Chicago. *Loan Agreement*, ¶ 5.1. The loan agreement further

---

1. For purposes of ruling on a motion to dismiss for lack of personal jurisdiction, disputed facts are viewed in favor of the party asserting jurisdiction. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir.1987); *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir.1983), *cert. denied*, 465 U.S. 1024, 104 S.Ct. 1277, 1278, 79 L.Ed.2d 682 (1984).

provides that it shall be "governed by the laws of the State of Illinois." *Id.* ¶ 12.5.

Repayment of the loan was guaranteed by several individuals, all of whom are shareholders of Guilford. These individuals executed the guaranties in January 1984. Similar to the loan agreement, the guaranties provide that they shall be construed in accordance with Illinois law. *See Amended and Restated Guaranty*, § 8(e).

In 1986, Guilford began experiencing financial difficulties. Guilford eventually defaulted on its loan obligation and, on December 31, 1986, Guilford filed for bankruptcy. Guilford made several more loan payments until May 1987, when it ceased paying altogether. For the next two years, the guarantors continued to make the monthly payments. By December 1989, however, each guarantor stopped making payment to Continental. According to Continental, approximately $3,500,000 remains due and owing on the loan. Seeking to recover the balance of the loan, Continental commenced this diversity action against the guarantors. Three of the guarantors—Kathrine Everett, Robinson Everett, and J.H. Froelich—now claim that this court lacks personal jurisdiction over them.[2]

## II. DISCUSSION

In a case based on diversity of citizenship, a federal court has personal jurisdiction over a nonresident defendant only if a court of the state in which the district court sits would have personal jurisdiction. *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276, 279 (7th Cir. July 2, 1990); *Turnock v. Cope*, 816 F.2d 332, 334 (7th Cir.1987). Illinois courts have personal jurisdiction over a nonresident defendant when the defendant falls within the contours of the Illinois long-arm statute, Ill.Rev.Stat. ch. 110, para. 2–209 (1989). The Illinois long-arm statute provides in relevant part:

(a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person ... to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

    (1) The transaction of any business within this State;

    . . . .

(f) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him or her is based upon subsection (a).

*Id.* Under the long-arm statute, jurisdiction will be proper if the defendant transacted business in Illinois, and if the cause of action arose from the in-state transaction. *Id.* But the invocation of jurisdiction must not only be appropriate under the long-arm statute, it must also comport with the requirements of due process. *Heritage House Restaurants, Inc.*, 906 F.2d at 279.

### A. Illinois Long–Arm Statute

■ Continental claims that defendants transacted business in Illinois within the meaning of the long-arm statute. This court agrees. In determining whether a defendant transacted business in Illinois, the court should consider several factors, including: which party initiated the transaction; where the parties entered into the contract; and where performance, or a substantial part thereof, was to take place. *Arthur Young & Co. v. Bremer*, 197 Ill. App.3d 30, 36, 143 Ill.Dec. 736, 741, 554 N.E.2d 671, 676 (1st Dist.1990); *Capital Assocs. Dev. Corp. v. Roberts–Ohbayashi Corp.*, 138 Ill.App.3d 1031, 1037, 93 Ill.Dec. 563, 567, 487 N.E.2d 7, 11 (1st Dist.1985).

With respect to the first factor, defendants argue that they did not initiate the transaction because an agent of Guilford—rather than the individual guarantors—made the initial contact with Continental.[3]

---

**2.** Continental has filed a separate lawsuit against guarantor James Thrash. In that case, Thrash filed a motion to dismiss for lack of personal jurisdiction, which was denied by Judge Plunkett. *See Continental Bank, N.A. v.*

*Thrash,* No. 89 C 4865, 1989 WL 121209 (N.D.Ill. Oct. 3, 1989).

**3.** Defendants admit that Continental did not initiate the business transaction at issue.

The long-arm statute explicitly states that actions taken by an agent may provide the basis for asserting jurisdiction. Ill.Rev. Stat. ch. 110, para. 2–209(a) (1989); *see also Heritage House Restaurants, Inc.*, 906 F.2d at 281 ("the fact that [the defendant] acted through an agent ... in its dealings with [the plaintiff] does not affect our jurisdictional analysis"). Nonetheless, defendants claim that Guilford's agent was not acting on their behalf when he initiated the transaction. This argument is unpersuasive. As officers, directors, and shareholders of Guilford, the guarantors naturally had an interest in securing enough funds for Guilford's continued viability. *See Intamin, Inc. v. Figley–Wright Contractors, Inc.*, 595 F.Supp. 1348, 1349 (N.D.Ill.1984). Defendants would benefit, albeit indirectly, from Guilford's ability to obtain the financing necessary for its operations. Although each of the defendants in this case did not personally contact Continental during the initial negotiations, they played a central role in securing the loan. Their decision to execute personal guaranties as an inducement for granting the loan belies any other conclusion.

Another factor which supports a finding of personal jurisdiction is that the loan agreement and guaranties were to be performed in Illinois. In fact, "contract performance in Illinois has of itself been held a sufficient basis for jurisdiction." *Jacobs/Kahan & Co. v. Marsh*, 740 F.2d 587, 590 (7th Cir.1984) (citing *Cook Assocs., Inc. v. Colonial Broach & Mach. Co.*, 14 Ill. App.3d 965, 304 N.E.2d 27 (1st Dist.1973)). Defendants' only obligation under the loan contract and guaranties was to repay Continental. Ultimately, defendants were responsible for ensuring that payment was made to Continental in Chicago. Since payment was due in Illinois, the loan agreement and guaranties were to be performed primarily in Illinois. *Id.* at 591; *First Nat'l Bank of Chicago v. Boelcskevy*, 126

Ill.App.3d 271, 274, 81 Ill.Dec. 380, 383, 466 N.E.2d 1182, 1185 (1st Dist.1984) (the guaranty unambiguously required performance in Illinois because the demand notes were payable in Chicago); *see also Financial Management Servs., Inc. v. Sibilsky & Sibilsky, Inc.*, 130 Ill.App.3d 826, 833, 86 Ill.Dec. 100, 106, 474 N.E.2d 1297, 1303 (1st Dist.1985). Moreover, from 1987 to 1989, the Everetts actually performed under the guaranties by sending monthly payments to Continental in Chicago. Although Froelich made several payments to Continental's bankruptcy counsel in North Carolina, he was not relieved of his primary obligation to pay Continental at its offices in Chicago.[4]

A defendant transacts business in Illinois not only when the contract is to be substantially performed in Illinois, but also when the defendant invokes the "benefits and protections" of Illinois law. *Arthur Young & Co.*, 197 Ill.App.3d at 36, 143 Ill.Dec. at 740–41, 554 N.E.2d at 675–76; *Boelcskevy*, 126 Ill.App.3d at 274, 81 Ill. Dec. at 383, 466 N.E.2d at 1185; *see also Ronco, Inc. v. Plastics, Inc.*, 539 F.Supp. 391, 396 (N.D.Ill.1982). The loan agreement and the guaranties unambiguously state that Illinois law is to govern the transaction. *See Loan Agreement*, ¶ 12.5; *Amended and Restated Guaranty*, § 8(e). "By choosing to apply Illinois law to this transaction, defendants sought to invoke the protections and benefits of the law of Illinois." *Ronco, Inc.*, 539 F.Supp. at 396; *see also O'Hare Int'l Bank v. Hampton*, 437 F.2d 1173, 1177 (7th Cir.1971) ("the fact that the guaranty was to be construed according to Illinois law and performed in that state clearly demonstrates that the defendants 'invoked the benefits and protection' of the state"). Having invoked the benefits and protection of Illinois law, defendants voluntarily submitted to the jurisdiction of Illinois courts.

---

4. The other factor set forth in *Arthur Young & Co.*, *supra*—i.e., where the contracts were formed—is inconclusive in this case. Defendants contend that they never went to Illinois in connection with the negotiation or execution of the loan agreement and guaranties. Continental, on the other hand, claims that the loan agreement and guaranties were executed in Illinois. *See Affidavit of Kurt W. Anstaett*, ¶ 6. The contracts contain provisions stating that they were delivered and executed in Chicago, Illinois. While these provisions are not dispositive as to the place of contract formation, they are entitled to some weight.

This conclusion is bolstered by the fact that Kathrine and Robinson Everett both came to Chicago and discussed the transaction with Continental.[5] *See Ronco, Inc.,* 539 F.Supp. at 396 ("[w]hen a defendant comes to Illinois and engages in negotiations of some substance regarding the transaction from which the cause of action arises, then the defendant is subject to suit in Illinois"). In August 1984, the Everetts first met with Continental in Chicago and discussed the extent of their involvement with Guilford.[6] *Affidavit of Cathleen A. Strenk,* ¶ 4. Over the next several years, Robinson Everett met with Continental in Chicago on three separate occasions to discuss Guilford's financial status and the guarantors' obligations. *Id.* ¶¶ 5, 6, 7. Yet, the Everetts argue that they came to Chicago on matters unrelated to the loan agreement, and met with Continental only as a matter of convenience. This argument might have merit if the Everetts had been tricked or lured into coming to Illinois. In the absence of any such evidence, however, the Everetts' appearances in Illinois are significant. The Everetts voluntarily met with Continental in Chicago and discussed the transaction giving rise to the cause of action. This court sees no reason to simply disregard these meetings merely because the Everetts also conducted other business while in Illinois. *Jacobs/Kahan & Co.,* 740 F.2d at 592 n. 7.

All of the factors discussed above point in favor of asserting jurisdiction. Admittedly, no single factor standing alone would appear to be sufficient to support *in personam* jurisdiction over the defendants. *AM Int'l Leasing Corp. v. National Council of Negro Women, Inc.,* 627 F.Supp. 1302, 1307 (N.D.Ill.1986). But the combined weight of the factors persuades the court that defendants have transacted business in Illinois.

In order to fully satisfy the requirements of the Illinois long-arm statute, Continental must not only demonstrate that defendants transacted business in Illinois, Continental must also show that its cause of action arose from defendants' transaction of business. Ill.Rev.Stat. ch. 110, para. 2–209 (1989). That jurisdictional requirement is easily satisfied in this case. Continental's claim is based directly on defendants' obligations under the guaranties; defendants' obligation to pay Continental, and the failure to make such payment, gave rise to Continental's cause of action. Therefore, jurisdiction is proper under the long-arm statute.

### B. Due Process

■ After determining that jurisdiction is proper under the long-arm statute, the court must also ensure that the exercise of jurisdiction does not violate due process. The Due Process Clause protects an individual from the judgment of a state with which he has no "contacts, ties, or relations." *International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 159, 90 L.Ed. 95 (1945). However, an individual will be subject to the jurisdiction of the forum state if he "purposefully avails [himself] of the privilege of conducting activities" within that state. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). A relevant consideration in this due process analysis is foreseeability—whether the defendant's contacts with the forum are such that he could reasonably have anticipated being haled into court in the forum state. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *Heritage House Restaurants, Inc.,* 906 F.2d at 283.

Thus, the mere fact that defendant Froelich was never physically present in Illinois does not diminish the court's ability to exercise jurisdiction over him.

---

5. Even if none of the defendants traveled to Illinois in connection with the transaction, the court may nonetheless obtain personal jurisdiction: "The physical presence of a defendant in Illinois during the transaction is not necessary to obtain jurisdiction under the long-arm statute." *Heritage House Restaurants, Inc.,* 906 F.2d at 281. A contractual relationship based on telephone and mail contacts may be sufficient to establish jurisdiction over a defendant. *Id.*

6. With a 65% ownership interest, Kathrine and Robinson Everett were the largest shareholders of Guilford.

In this case, defendants' contacts with Illinois were not merely random or fortuitous. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). Rather, defendants purposefully conducted business with a corporation located and doing business in Illinois. *See Heritage House Restaurants, Inc.*, 906 F.2d at 283; *see also Lyons Sav. and Loan Ass'n v. Geode, Inc.*, 626 F.Supp. 1141, 1143 (N.D.Ill.1986) (by borrowing money from an Illinois corporation, the defendant "purposefully availed itself of the privilege of conducting business in Illinois"). Defendants understood the purpose behind the loan and the significance of their guaranties to obtaining the loan. When they failed to make the requisite payments, defendants reasonably could have anticipated being subject to litigation in Illinois. *See O'Hare Int'l Bank*, 437 F.2d at 1177 ("The defendants certainly must have contemplated the effects in Illinois of a failure to make the monthly rental payments."); *see also Geode Inc.*, 626 F.Supp. at 1143–44; *Welles Prods. Corp. v. Plad Equip. Co.*, 563 F.Supp. 446, 449 (N.D.Ill.1983).

Based on defendants' contacts with Illinois in relation to the loan transaction, the court concludes that the exercise of personal jurisdiction will not offend the Due Process Clause. Besides, Illinois courts have held that the long-arm statute is narrower in scope than the constitutional due process test; by satisfying the requirements of the Illinois long-arm statute, the plaintiff necessarily satisfies the "minimum contacts" test set forth in *International Shoe* and its progeny. *See Arthur Young & Co.*, 197 Ill.App.3d at 35, 143 Ill.Dec. at 740, 554 N.E.2d at 675; *Green v. Advance Ross Elecs. Corp.*, 86 Ill.2d 431, 436–37, 56 Ill. Dec. 657, 660, 427 N.E.2d 1203, 1206 (1981); *see also AM Int'l Leasing Corp.*, 627 F.Supp. at 1308.[7]

### III. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss for lack of personal juris-diction is denied. Defendants are hereby ordered to answer plaintiff's complaint within ten days of receiving notice of this order.

IT IS SO ORDERED.

---

**7.** Despite its ability to avoid dismissal at this early stage of the litigation, Continental must nonetheless adduce sufficient facts at trial demonstrating the existence of personal jurisdiction. *O'Hare Int'l Bank*, 437 F.2d at 1177 n. 2; *Welles Prods. Corp.*, 563 F.Supp. at 449 n. 5.